**UNITED STATES of America, Plaintiff,**

v.

**Daniel SMITH, Defendant.**

**Criminal No. 95–52–P–C.**

United States District Court,
D. Maine.

March 25, 1996.

George T. Dilworth, Asst. U.S. Atty., Portland, Maine, for the Government.

James R. Bushell, Portland, Maine, for Defendant.

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

GENE CARTER, Chief Judge.

By a two-count indictment, Daniel Smith was charged with (1) conspiracy to manufacture more than one hundred marijuana plants in violation of 21 U.S.C. §§ 841(a)(1), 846, and (2) manufacturing more than 100 marijuana plants and aiding and abetting such conduct in violation of 21 U.S.C. § 841(a)(2) and 18 U.S.C. § 2. Indictment (Docket No. 1). Now before the Court is Defendant's Motion to Dismiss Indictment for Lack of Subject Matter Jurisdiction (Docket No. 4) in which Defendant contests the constitutional validity of 21 U.S.C. § 841(a)(1). The Court concludes that section 841(a)(1) is a permissible use of Congress's power pursuant to the Commerce Clause on its face and as applied to Defendant. Accordingly, the Court will deny Defendant's motion.

### I.

Relying on the United States Supreme Court's recent decision in *United States v. Lopez,* 514 U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Defendant contends that section 841 constitutes an impermissible use of Congress's powers granted by the Commerce Clause and that the conduct with which he has been charged does not have a significant effect on interstate commerce.

### A. *United States v. Lopez*

In *Lopez,* the Supreme Court determined that Congress exceeded its authority to regulate under the Commerce Clause when it enacted the Gun–Free School Zones Act of 1990 [the Gun Act]. The Gun Act made it unlawful for an individual to possess a firearm on or within 1,000 feet of the grounds of a school. *See Lopez,* 514 U.S. at —— & n. 1, 115 S.Ct. at 1626 & n. 1 The Supreme Court noted that there are three ways in which Congress may regulate pursuant to the Commerce Clause: (1) "Congress may regulate the use of the channels of interstate commerce;" (2) Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) Congress may regulate "those activities that substantially affect interstate commerce." *Lopez,* at —— – ——, 115 S.Ct. at 1629–30. The Supreme Court concluded that the Gun Act would have to fall within the third category for its constitutionality to be sustained. *Id.* at ——, 115 S.Ct. at 1630.

The Court determined that the statute did not fall within that category for two reasons. First, the Gun Act "has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at —— – ——, 115 S.Ct. at 1630–31. The statute did not constitute a portion of a larger regulation of economic activity and could not be upheld as a regulation of an activity connected with a commercial transaction. *Id.* at ——, 115 S.Ct. at 1631. Second, the Gun Act "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* The Court specifically noted that Congress had failed to set forth legislative findings concerning the effect of the prohibited activity on interstate commerce. *Id.* at —— – ——, 115 S.Ct. at 1631–32.

Contrary to Defendant's contention, *Lopez* neither purports to espouse a more critical test of Congress's authority under the Commerce Clause nor overrules by implication prior decisions upholding the constitutionali-

ty of section 841(a)(1). *See, e.g., United States v. Visman,* 919 F.2d 1390, 1393 (9th Cir.1990) (upholding constitutionality of section 841(a)(1) even though it does not require interstate nexus as an element of the crime), *cert. denied,* 502 U.S. 969, 112 S.Ct. 442, 116 L.Ed.2d 460 (1991); *United States v. Lopez,* 459 F.2d 949, 953 (5th Cir.) (same), *cert. denied,* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972). Instead, the Supreme Court employed the same analysis it has used previously, and rather than limiting the applicability of the Commerce Clause, the Supreme Court expressly declined to expand the breadth of Congress's power to regulate pursuant to the Commerce Clause to include the Gun Act. *Lopez,* 514 U.S. at ——, 115 S.Ct. at 1634.

**B. *The Constitutionality of the Drug Act***

■ Defendant has been charged under statutes that are part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801 *et seq.* [the Drug Act]. Section 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

The issue presented by this motion, whether section 841(a)(1) is a constitutional exercise of Congress's power pursuant to the Commerce Clause, has been addressed previously by several courts since the *Lopez* decision. Each of the Courts that has examined the issue has upheld the statute. *See United States v. Brown,* 72 F.3d 96, 97 (8th Cir. 1995); *United States v. Wacker,* 72 F.3d 1453, 1475 (10th Cir.1995); *United States v. Leshuk,* 65 F.3d 1105, 1112 (4th Cir.1995); *United States v. Lynch,* 908 F.Supp. 284, 291 (D.V.I.1995); *United States v. Kremetis,* 903 F.Supp. 250, 252 (D.N.H.1995); *United*

States v. Gonzalez,* 893 F.Supp. 935, 936–37 (S.D.Cal.1995); *United States v. Bramble,* 894 F.Supp. 1384, 1395–96 (D.Haw.1995); *United States v. Grafton,* 1995 WL 506001, at *5 (N.D.Ga.1995); *United States v. Murillo,* 1995 WL 621797, at *2 (N.D.Cal.1995). This Court agrees with the rationale of those decisions and concludes that section 841 is a constitutional use of Congress's power to regulate commerce.

Section 841 is a permissible exercise of Congress's power to regulate commerce for two reasons. First, unlike the statute at issue in *Lopez,* section 841 regulates a commercial activity. That is, the statute regulates the manufacture and distribution of controlled substances and constitutes a portion of the larger legislative scheme of regulation imposed by the Drug Act. Accordingly, the present case is much different from that in *Lopez* because the present statutory scheme regulates commerce. *See Wacker,* 72 F.3d at 1475 (unlike the Gun Act, "the conduct regulated by the Drug Act clearly implicates interstate commerce"); *Leshuk,* 65 F.3d at 1112 ("In contrast to the firearm possession prohibited in the Gun Act, the intrastate drug activities regulated in the Drug Act are clearly tied to interstate commerce.") *quoted in Kremetis,* 903 F.Supp. at 252; *Gonzalez,* 893 F.Supp. at 937 (noting that unlike firearm possession, drug trafficking is inherently commercial); *Bramble,* 894 F.Supp. at 1395 ("the court finds that there is, in fact, a direct connection between this statute and commerce").

Second, unlike the statutory scheme of the Gun Act at issue in *Lopez,* Congress has made specific findings within the Drug Act that local drug traffic affects interstate commerce. *See* 21 U.S.C. § 801.[1] The Court

---

**1.** Section 801 provides, in pertinent part:

The Congress makes the following findings and declarations:

. . . . .

(3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because—

(A) after manufacture, many controlled substances are transported in interstate commerce,

(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and

(C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

must review Congress's determination that the regulated activity affects interstate commerce to determine if there is a rational basis for such finding. *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 277, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981).[2] In this case, having reviewed the findings in section 801, this Court determines that there is a rational basis for them. *See Leshuk*, 65 F.3d at 1112 (relying, in part, on specific findings by Congress in upholding constitutionality of Drug Act); *Kremetis*, 903 F.Supp. at 251–52 (same); *Bramble*, 894 F.Supp. at 1395 (same); *Murillo*, 1995 WL 621797, at *2 (same). Accordingly, the Court concludes that under the analytical scheme of *Lopez*, section 841(a)(1) is a permissible exercise of Congress's authority to regulate interstate commerce.

## II.

■ Defendant further contends that section 841 is unconstitutional as applied to him because he did not intend to traffick the marijuana in intrastate or interstate commerce. Instead, Defendant contends that the marijuana was for his personal use.

Even if it be true that Defendant merely intended to use the marijuana for himself, that fact makes no difference. The government need not demonstrate a nexus to interstate commerce in every prosecution

pursuant to section 841(a)(1). Instead, as reiterated by the Supreme Court in *Lopez*, " 'where a *general regulatory statute bears a substantial relation to commerce,* the *de minimis* character of individual instances arising under that statute is of no consequence.' " *Lopez*, 514 U.S. at ——, 115 S.Ct. at 1629 (quoting *Maryland v. Wirtz*, 392 U.S. 183, 197 n. 27, 88 S.Ct. 2017, 2024 n. 27, 20 L.Ed.2d 1020 (1968)) (emphasis supplied in *Lopez* ). In this case, the Drug Act bears a substantial relation to commerce by regulating the manufacture, distribution, and sale of controlled substances that frequently travel in intrastate commerce. Accordingly, even as applied to a defendant who did not engage in interstate commerce, the constitutionality of the statute does not depend upon whether the particular defendant engaged in interstate commerce. *See also Leshuk*, 65 F.3d at 1112 (providing that constitutionality of Drug Act is not altered by fact that government need not show that specific conduct in each case affected interstate commerce); *Kremetis*, 903 F.Supp. at 251 (same); *Murillo*, 1995 WL 621797, at *2 (rejecting defendant's contention that government must prove that alleged violation of Drug Act had substantial effect on interstate commerce in each case because, unlike the Gun Act at issue

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

2. As concerns reviewing legislative findings in relation to congressional use of the Commerce Clause, the Supreme Court has provided as follows:

The task of a court that is asked to determine whether a particular exercise of congressional power is valid under the Commerce Clause is relatively narrow. The court must defer to a congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S.

241, 258 [85 S.Ct. 348, 357, 13 L.Ed.2d 258] (1964); *Katzenbach v. McClung*, 379 U.S. 294, 303–304 [85 S.Ct. 377, 383–384, 13 L.Ed.2d 290] (1964). This established, the only remaining question for judicial inquiry is whether 'the means chosen by [Congress] must be reasonably adapted to the end permitted by the Constitution.' *Heart of Atlanta Motel, Inc. v. United States, supra*, at 262 [85 S.Ct. at 359]. *See United States v. Darby*, 312 U.S. 100, 121 [61 S.Ct. 451, 460, 85 L.Ed. 609] (1941); *Katzenbach v. McClung*, 379 U.S., at 304 [85 S.Ct. at 384]. The judicial task is at an end once the court determines that Congress acted rationally in adopting a particular regulatory scheme. *Ibid.*

* * * * *

Thus, when Congress has determined that an activity affects interstate commerce, the courts need inquire only whether the finding is rational.

*Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 276–77, 101 S.Ct. 2352, 2360–61, 69 L.Ed.2d 1 (1981).

in *Lopez,* Congress is regulating a commercial activity).

 Furthermore, the Court finds that the conspiracy with which Defendant was involved engaged in interstate commerce. An evidentiary hearing was held at which one of Defendant's alleged co-conspirators, Wayne Merrifield, and an agent from the Maine Drug Enforcement Agency [MDEA] testified. From this evidentiary hearing and for the purposes of the disposition of the pending motion, the Court makes the following factual findings.

Defendant conspired with several others to grow marijuana in the basement of a house belonging to Francis Terroni. Merrifield and Defendant supplied the expertise, and Terroni supplied the place to grow the marijuana. The marijuana plants were grown with the assistance of special lamps purchased in Massachusetts, predator insects purchased from Oregon, "Pro–Mix" manufactured in Canada, a "Hydro Farm transformer" assembled out-of-state, and electricity that had traveled in interstate commerce.

The Court also finds that Defendant and his co-conspirators intended to sell the marijuana rather than smoke it all themselves. Upon raiding Terroni's home on March 29, 1995, the MDEA found in excess of seven hundred marijuana plants. Each plant produces between a quarter pound and a pound of marijuana. Although Defendant is alleged to have smoked one-half pound of marijuana per month, the amount of marijuana produced by the plants far exceeds what even so prodigious a smoker as Defendant could have consumed personally. Moreover, Merrifield testified that he and Defendant had made several thousand dollars by selling approximately one hundred plants and a few "bags" of marijuana prior to the raid, and that they hoped to make more than fifty thousand dollars from the marijuana in Terroni's basement. Therefore, the Court finds that the facts of this case displays a nexus to interstate commerce and concludes that section 841(a)(1) is constitutional as applied to Defendant.

### III.

It is ***ORDERED*** that Defendant's Motion to Dismiss Indictment for Lack of Subject Matter Jurisdiction be, and it is hereby, ***DENIED.***