UNITED STATES of America, Appellee,

v.

Maximo GENAO; Francisco Miguel Genao; Robert Llin, Jr., also known as Robertito; Livi Cabrera; Franklin Vargas; Anibal Abad; Reginaldo Garcia, aka Ray; Myra Acosta; Francis Liberato, aka Kiko; Ramon Burgos; Cesar Carmona, aka Cesar; Maribel Miranda; Janet Rodriguez; Dario Mena; Carlos Blanco, aka Cheo, aka Chelo; LNU1–92CR510–018, aka Guillermo; Alfredo Nova, aka Fredo; Jorge Felix Puello; Papolo Pilon, LNU1–92CR510–022, aka Mario; LNU1–92CR510–023, aka Rafie; Pedro Lara, aka Nino; LNU1–92CR510–025; aka Oscar; LNU1–92CR510–026, aka Marlene; LNU1–92CR510–027, aka Piedad, Defendants,

Pedro Genao, aka Pepo, aka Guzman Cabral; Robert Llin, Sr., Defendants–Appellants.

Nos. 532, 707, Dockets 95–1084, 95–1266.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1995.

Decided April 1, 1996.

Kenneth M. Karas, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Nancy J. Northup, Assistant United States Attorney, New York City, of counsel), for Appellee.

James Kousouros, Kew Gardens, NY, for Defendant–Appellant Llin.

Before CARDAMONE, MAHONEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Defendant-Appellant Robert Llin, Sr. appeals from a judgment of conviction for conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 before the United States District Court for the Southern District of New York (John S. Martin, Jr., *District Judge* ). On appeal, Llin alleges that the district judge abused his discretion by (1) refusing to grant a continuance so that defense counsel could consider Federal Rule of Criminal Procedure 16 and 18 U.S.C. § 3500 materials, thereby violating Llin's right to a fair trial; (2) excessively sentencing Llin on the basis of an exaggerated quantity of cocaine; (3) refusing to find that Llin's trial counsel rendered ineffective assistance; (4) refusing to find that the testimony of the government's informant was insufficient to support a guilty verdict; and (5) finding that 21 U.S.C. § 846 is a valid exercise of Congress's Commerce Clause power.

The judgment of the district court is hereby affirmed.[1]

## BACKGROUND

On February 11, 1993, Defendant–Appellant Robert Llin, Sr. was indicted on one count of conspiring to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841. He initially accepted an offer by the government to plead guilty to possession of 250 grams of cocaine and so pled on May 24, 1993. Subsequently, however, he claimed that he was innocent and that he wished to withdraw his plea. On December 1, 1993, the district court permitted him to do so and set a trial date. On

---

1. Counsel for co-Defendant-Appellant Pedro Genao filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), certifying that there were no nonfrivolous issues to appeal. We granted counsel's motion to be relieved, ordered that new counsel be appointed, and denied the government's motion for summary affirmance without prejudice.

January 7, 1994, following a four-day jury trial, Llin was convicted on the conspiracy count and acquitted on the two substantive counts. On April 28, 1995, he was sentenced to a term of incarceration of ninety-seven months to be followed by five years supervised release. He is currently serving his sentence.

## DISCUSSION

Llin challenges the statute under which he was convicted as unconstitutional. He alleges that in enacting the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "Controlled Substances Act"), of which 21 U.S.C. § 846 is a part, Congress exceeded its authority under the Commerce Clause, Article I, § 8 of the Constitution, thereby violating the Tenth Amendment which reserves to the states the powers not delegated to the United States.

Llin contends that his conviction under 21 U.S.C. § 846 cannot stand because the statute does not require, and the government failed to prove, that Llin's conduct affected interstate commerce.[2] Llin argues that because his conduct was solely intrastate, it is not subject to regulation by Congress. The Supreme Court has, however, expressly held that Congress may regulate activity that occurs wholly within a particular state if the activity has a sufficient nexus to interstate commerce.[3] *See Fry v. United States,* 421 U.S. 542, 547, 95 S.Ct. 1792, 1795, 44 L.Ed.2d 363 (1975) ("Congress'[s] power under the Commerce Clause is very broad. Even activity that is purely intrastate in character may be regulated by Congress, where the activity, combined with like conduct by others similarly situated, affects

commerce among the States or with foreign nations."); *Perez v. United States,* 402 U.S. 146, 156–57, 91 S.Ct. 1357, 1362–63, 28 L.Ed.2d 686 (1971) (upholding Title II of the Consumer Credit Protection Act, as applied to one engaged in local loansharking, on the basis that "loan sharking in its national setting is one way organized interstate crime holds its guns to the heads of the poor and the rich alike and syphons funds from numerous localities to finance its national operations."); *Houston, E. & W. Texas Ry. Co. v. United States,* 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914). The Court has stated that "it [is] necessary no longer to search for some sharp point or line where interstate commerce ends and intrastate commerce begins." *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 232, 68 S.Ct. 996, 1004, 92 L.Ed. 1328 (1948). Rather, there "is an obvious distinction to be drawn between a course of conduct wholly within a state and conduct which is an inseparable element of a larger program dependent for its success upon activity which affects commerce between the states." *Id.* at 236–37, 68 S.Ct. at 1006. (quotation omitted).

Congress's findings and declarations with respect to its enactment of the Controlled Substances Act are codified at 21 U.S.C. § 801 which, in relevant part, provides as follows:

(3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because

---

**2.** 21 U.S.C. § 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter [(e.g., 21 U.S.C. § 841)] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 841 provides, in pertinent part:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

**3.** The Supreme Court recently recognized that the "case law has not been clear whether an activity must 'affect' or 'substantially affect' interstate commerce in order to be within Congress'[s] power to regulate it under the Commerce Clause," and accordingly held that "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *United States v. Lopez,* —— U.S. ——, ——, 115 S.Ct. 1624, 1630, 131 L.Ed.2d 626 (1995).

(A) after manufacture, many controlled substances are transported in interstate commerce, (B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and (C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

Because narcotics trafficking represents a type of activity that Congress reasonably found substantially affected interstate commerce, the actual effect that each drug conspiracy has on interstate commerce is constitutionally irrelevant.

In considering the exact issue before us, the Fifth Circuit has stated:

A familiar exercise of [the Commerce Clause] power is the regulation of intrastate activities which are so commingled with or related to interstate activities that all must be regulated if interstate commerce is effectively to be controlled. . . .
Consequently, where it is apparent that an attempt to separate interstate activities from intrastate activities would be a futile exercise substantially interfering with and obstructing the exercise of the granted power of Congress to regulate interstate commerce, that attempt is not required.
While sometimes leaving to the courts the task of determining whether interstate commerce is affected by particular intrastate activities or whether an attempt to separate intrastate activities from those interstate would be a futile exercise, Congress, in passing [the Comprehensive Drug Abuse Prevention and Control Act of 1970], has for itself made this determination.

. . . Congress has the power to make this determination and take this action.

*United States v. Lopez,* 459 F.2d 949, 951 (5th Cir.) (citations omitted), *cert. denied,* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972). We agree. Furthermore, we note that several other circuits have similarly upheld the Controlled Substances Act in the face of Commerce Clause challenges. *See, e.g., United States v. Leshuk,* 65 F.3d 1105, 1112 (4th Cir.1995); *United States v. Bernard,* 47 F.3d 1101, 1103 (11th Cir.1995) (per curiam); *United States v. Rodriquez–Camacho,* 468 F.2d 1220, 1221–22 (9th Cir.1972) ("Congress may regulate not only interstate commerce but also those wholly intrastate activities which it concludes have an effect upon interstate commerce. . . . Congress has made specific findings as to the effect of intrastate activities in controlled substances on interstate commerce. This court will certainly not substitute its judgment for that of Congress in such a matter unless the relation of the subject to interstate commerce and its effect upon it are clearly nonexistent.' Such is not the case as regards controlled substances.") (quoting *Stafford v. Wallace,* 258 U.S. 495, 521, 42 S.Ct. 397, 403, 66 L.Ed. 735 (1922)) (footnote omitted), *cert. denied,* 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973); *United States v. Scales,* 464 F.2d 371, 373–75 (6th Cir.1972).

Llin claims that 21 U.S.C. § 846 criminalizes conduct that has only "a spurious connection with interstate or international commerce" and therefore fails the rational basis test set forth in *Maryland v. Wirtz,* 392 U.S. 183, 190, 88 S.Ct. 2017, 2020, 20 L.Ed.2d 1020 (1968). He relies for support on the Supreme Court's recent decision in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), in which the Court struck down 18 U.S.C. § 922(q), the Gun–Free School Zones Act of 1990, as violative of the Commerce Clause. Llin's reliance on *Lopez* is, however, misplaced.

In *Lopez,* the Court held that the statute at issue there

> ha[d] nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms. [The statute was] not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It [could not], therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.

—— U.S. at ——–——, 115 S.Ct. at 1630–31 (footnote omitted).

In rendering its decision, the *Lopez* Court did not purport to overrule those cases that have upheld application of the Commerce Clause power to wholly intrastate activities, and we find no basis for extending the *Lopez* holding to the case before us. The Controlled Substances Act concerns an obviously economic activity. In addition, Congress has made specific findings that local narcotics activity has a substantial effect on interstate commerce. In contrast, the conduct that was criminalized in *Lopez* did not obviously concern economic activity, as the Court recognized. *See also Leshuk,* 65 F.3d at 1112 ("In contrast to the firearm possession prohibited in the Gun Act, the intrastate drug activities regulated in the Drug Act are clearly tied to interstate commerce."). Nor had Congress made specific findings that such conduct, possession of a firearm in a school zone, substantially affects interstate commerce.

Because we find the statute at issue here to be different from that at issue in *Lopez* in ways that make the rationale of that decision inapplicable, we reject Llin's Commerce Clause challenge.

Llin alleges several additional claims of error: (1) the district court denied him a fair trial by refusing to grant a continuance so that defense counsel could fully consider materials that were not timely disclosed under Federal Rule of Criminal Procedure 16 and 18 U.S.C. § 3500; (2) the district court imposed an excessive sentence on Llin because it erroneously attributed to him four kilo-grams of cocaine; (3) Llin was denied the effective assistance of trial counsel; and (4) the evidence was insufficient to support Llin's conviction. Judge Martin's treatment of these issues cannot be faulted and we find Llin's additional claims to be without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.