**Joel PROYECT, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 253, Docket 96–2060.**

United States Court of Appeals, Second Circuit.

Argued Nov. 15, 1996.

Decided Nov. 21, 1996.

Joel M. Proyect, pro se, Montgomery, PA, for Petitioner–Appellant.

Jamie L. Kogan, Assistant United States Attorney, Southern District of New York, New York City (Mary Jo White, United States Attorney, Marian W. Payson, Assis-

---

tant United States Attorney, of counsel), for Respondent–Appellee.

Before OAKES and CALABRESI, Circuit Judges, and HAIGHT, District Judge.*

PER CURIAM:

This case involves a challenge to 21 U.S.C. § 841(a)(1), which criminalizes the manufacture of marijuana, on the ground that Congress, in passing the statute, exceeded its power under the Commerce Clause of the Constitution, U.S. CONST. art. I, § 8, cl. 3. Like every other court to have considered the issue, we reject this argument.

In August 1991, following an investigation that indicated that he was growing marijuana, Joel Proyect was placed under arrest. More than 100 marijuana plants were seized from his property. In February 1992, Proyect pleaded guilty to manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1), which makes it "unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." On May 29, 1992, he was sentenced to the statutory mandatory minimum five years' imprisonment. See 21 U.S.C. § 841(b)(1)(B). On direct appeal, Proyect challenged his sentence on a number of grounds. We rejected each of his claims. See United States v. Proyect, 989 F.2d 84 (2d Cir.), cert. denied, 510 U.S. 822, 114 S.Ct. 80, 126 L.Ed.2d 49 (1993).

In September 1995, Proyect filed a petition in the district court, pursuant to 28 U.S.C. § 2255, seeking to vacate his conviction and sentence. In his petition, Proyect argued that, under the Supreme Court's recent decision in United States v. Lopez, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Congress had exceeded its authority in enacting 21 U.S.C. § 841(a)(1), because that statute criminalizes the manufacture of marijuana without requiring an intent to distribute it in commerce. Judge Brieant denied the petition on January 3, 1996. Proyect now appeals that decision.

The Commerce Clause empowers Congress "[t]o regulate Commerce ... among the several States." U.S. CONST. art. I, § 8, cl. 3. In Lopez, the Supreme Court held that Congress had exceeded its power under the Commerce Clause in enacting the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q), which made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." This was so because the act "neither regulate[d] a commercial activity nor contain[ed] a requirement that the possession be connected in any way to interstate commerce." Lopez, —— U.S. at ——, 115 S.Ct. at 1626. Proyect argues that the Supreme Court's reasoning in Lopez, and its renewed willingness to place limits on congressional power, render his conviction under 21 U.S.C. § 841(a)(1) invalid. We disagree.

In Lopez, the Court noted that Congress had made no explicit findings about the effect upon interstate commerce of gun possession in proximity to schools. See Lopez, —— U.S. at ——, 115 S.Ct. at 1631. By contrast, in passing the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, 84 Stat. 1236 (codified as amended at 21 U.S.C. § 801 et seq.) (the "Controlled Substances Act"), Congress found and declared:

> A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce. . . .

21 U.S.C. § 801(3) (emphasis added); cf. United States v. Genao, 79 F.3d 1333, 1337 (2d Cir.1996) (noting that "Congress has made specific findings that local narcotics activity has a substantial effect on interstate commerce"). It is well-settled that a reviewing court "must defer to a congressional finding that a regulated activity affects interstate commerce if there is any rational basis for such a finding." Preseault v. ICC, 494 U.S.

---

* The Honorable Charles S. Haight, Jr., Senior District Judge of the United States District Court for the Southern District of New York, sitting by designation.

1, 17, 110 S.Ct. 914, 924, 108 L.Ed.2d 1 (1990) (citation and internal quotation marks omitted). And there is ample basis for these findings of Congress. *See, e.g., United States v. Lopez,* 459 F.2d 949, 953 (5th Cir. 1972) (upholding section 841(a)(1) and noting that, "[o]bviously, there was a rational basis for these findings because they stemmed from statistical reports and extensive testimony").

The Supreme Court in *Lopez* further explained that it struck down the Gun–Free School Zones Act because:

> Section 922(q) is a criminal statute that by its terms has nothing to do with "commerce" or any sort of economic enterprise, however broadly one might define those terms. Section 922(q) is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.

*Lopez,* —— U.S. at ——–——, 115 S.Ct. at 1630–31 (footnote omitted). The difference between this and the manufacture and distribution of controlled substances is striking. These activities are commercial by their very nature. Indeed, in upholding a different section of the Controlled Substances Act (21 U.S.C. § 846), we recently noted that, in contrast to the statute invalidated in *Lopez,* "[t]he Controlled Substances Act concerns an obviously economic activity." *Genao,* 79 F.3d at 1337.

It is therefore not surprising that every court that has considered the question, both before and after the Supreme Court's decision in *Lopez,* has concluded that section 841(a)(1) represents a valid exercise of the commerce power. *See, e.g., United States v. Edwards,* 98 F.3d 1364, 1369 (D.C.Cir.1996); *United States v. Kim,* 94 F.3d 1247, 1249–50 (9th Cir.1996); *United States v. Bell,* 90 F.3d 318, 321 (8th Cir.1996); *United States v. Lerebours,* 87 F.3d 582, 584–85 (1st Cir.1996); *United States v. Wacker,* 72 F.3d 1453, 1475 (10th Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996); *United*

*States v. Leshuk,* 65 F.3d 1105, 1111–12 (4th Cir.1995); *United States v. Scales,* 464 F.2d 371, 375 (6th Cir.1972); *Lopez,* 459 F.2d at 953.

Proyect attempts to distinguish this body of authority by arguing that, while growing marijuana for distribution has a significant impact on interstate commerce, growing marijuana only for personal consumption does not. Despite the fact that he was convicted of growing more than 100 marijuana plants, making it very unlikely that he personally intended to consume all of his crop, Proyect contends that no one may be convicted under a statute that fails to distinguish between the cultivation of marijuana for distribution and the cultivation of marijuana for personal consumption. This contention is without merit.

*Lopez* did not purport to undermine the long-standing doctrine that "Congress may regulate activity that occurs wholly within a particular state if the activity has a sufficient nexus to interstate commerce." *Genao,* 79 F.3d at 1335. The nexus to interstate commerce, moreover, is determined by the class of activities regulated by the statute as a whole, not by the simple act for which an individual defendant is convicted. Thus, Congress unquestionably has the power

> to declare that an entire class of activities affects commerce. The only question for the courts is then whether the class is within the reach of the federal power. The contention that in Commerce Clause cases the courts have the power to excise, as trivial, individual instances falling within a rationally defined class of activities has been put entirely to rest.

*Maryland v. Wirtz,* 392 U.S. 183, 192–93, 88 S.Ct. 2017, 2022, 20 L.Ed.2d 1020 (1968) (footnotes and internal quotation marks omitted); *see also Perez v. United States,* 402 U.S. 146, 154, 91 S.Ct. 1357, 1361, 28 L.Ed.2d 686 (1971).

In the case of section 841(a)(1), the class of regulated activities, even if narrowly defined as the manufacture of controlled substances, undoubtedly has a substantial impact on interstate commerce. *See, e.g., Leshuk,* 65 F.3d at 1112 (upholding the congressional finding "that intrastate manufacture, distribution, and possession of controlled substances, as a class of activities, have a sub-

stantial and direct effect upon interstate" commerce); *Lopez,* 459 F.2d at 952–53. The fact that certain intrastate activities within this class, such as growing marijuana solely for personal consumption, may not actually have a significant effect on interstate commerce is therefore irrelevant.[1] *Cf. Genao,* 79 F.3d at 1336 ("Because narcotics trafficking represents a type of activity that Congress reasonably found substantially affected interstate commerce, the actual effect that each drug conspiracy has on interstate commerce is constitutionally irrelevant.").

Proyect would have this court define the class of activities at issue as the cultivation of marijuana *without intent to distribute in commerce.* But defining the class in such terms would circumvent the mandate, reaffirmed in *Lopez,* that " 'where a *general regulatory statute bears a substantial relation to commerce,* the *de minimis* character of individual instances arising under that statute is of no consequence.' " *Lopez,* —— U.S. at ——, 115 S.Ct. at 1629 (quoting *Wirtz,* 392 U.S. at 197 n. 27, 88 S.Ct. at 2024 n. 27) (emphasis in *Lopez* ). Any class of economic activities could be defined so narrowly as to cover only those activities that do not have a substantial impact on interstate commerce. For instance, a defendant convicted of conspiracy to distribute narcotics under 21 U.S.C. § 846 could argue that his crime occurred entirely intrastate and that, to the extent that section 846 covers a class of activities that can be defined as "conspiracy to distribute narcotics locally in such a way as to have no effect on interstate commerce," the statute is unconstitutional. But we have recently held expressly to the contrary. *See Genao,* 79 F.3d at 1336–37.

We therefore join the Fourth Circuit and the District of Maine in rejecting the claim that 21 U.S.C. § 841(a)(1), by criminalizing the act of growing marijuana solely for personal consumption, is unconstitutional. *See Leshuk,* 65 F.3d at 1112 (section 841(a)(1) "is not unconstitutional as applied if [the defen-

dant's] possession and cultivation were for personal use and did not substantially affect interstate commerce," because *"Lopez* expressly reaffirmed the principle that where a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence") (citations and internal quotation marks omitted); *United States v. Smith,* 920 F.Supp. 245, 248 (D.Me.1996) ("Even if it be true that Defendant merely intended to use the marijuana for himself, that fact makes no difference. The government need not demonstrate a nexus to interstate commerce in every prosecution pursuant to section 841(a)(1)."); *see also United States v. Visman,* 919 F.2d 1390, 1393 (9th Cir.1990) (holding "that Congress may constitutionally regulate intrastate criminal cultivation of marijuana plants found rooted in the soil").

Because we find that 21 U.S.C. § 841(a)(1) represents a valid exercise of the commerce power, we affirm the order of the district court dismissing Proyect's section 2255 petition.

---

1. In any event, the cultivation of marijuana for personal consumption most likely *does* substantially affect interstate commerce. This is so because "it supplies a need of the man who grew it which would otherwise be reflected by purchases in the open market." *Wickard v. Filburn,* 317 U.S. 111, 128, 63 S.Ct. 82, 91, 87 L.Ed. 122

(1942). As such, there is "no doubt that Congress may properly have considered that [marijuana] consumed on the [property] where grown if wholly outside the scheme of regulation would have a substantial effect" on interstate commerce. *Id.* at 128–29, 63 S.Ct. at 90–91.