UNITED STATES of America,

v.

**Robert RILEY, Defendant.**

**No. 97 CR. 446(KMW).**

United States District Court,
S.D. New York.

Nov. 24, 1997.

George Canellos, Thomas Arena, Mary Jo White, U.S. Attorney, New York City, for Plaintiff.

Seth Farber, Joseph Nocella, Dewey Ballantine, New York City, for Defendant.

OPINION and ORDER

KIMBA M. WOOD, District Judge.

Defendant moves to dismiss both counts of his indictment on the ground that, under the standards articulated in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131

L.Ed.2d 626 (1995), the statute underlying both counts, 18 U.S.C. § 1959 (Supp.1997) ("Section 1959"), exceeds the power delegated to Congress in the Commerce Clause of the United States Constitution. U.S. Const., Art. I, cl. 3.[1] The government contends that Section 1959 is within the power delegated to Congress. In company with lower courts and litigants across the nation,[2] this Court thus must consider the judicially enforceable limit on Congress's commerce power in light of *Lopez.*

Defendant is charged with committing murder "for the purpose of gaining entrance to and increasing his position in" a racketeering enterprise. (*See* Indictment of Robert Riley, 97 Cir. 446 at 1–2.) Section 1959 makes it a crime, *inter alia,* to commit murder "for the purpose of gaining entrance to or maintaining or increasing [one's] position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a) (hereinafter "status murder"). For the reasons stated below, I hold that the Section 1959 prohibition on status murder is within the scope of the power delegated to Congress in the Commerce Clause and accordingly I deny defendant's motion to dismiss the indictment.

My holding is limited to Section 1959's prohibitions on status murder, because those prohibitions are the basis for defendant's indictment. I do not consider whether other provisions of Section 1959 (such as the murder-for-hire provision that defendant also challenges) not at issue here would be similarly upheld in the face of a constitutional challenge.

### I. Discussion

In *United States v. Lopez,* 514 U.S. 549, 559–67, 115 S.Ct. 1624, 1629–33, 131 L.Ed.2d 626 (1995), the Supreme Court decided that the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A) (1988), was unconstitutional because it exceeded congressional power under the Commerce Clause. The Commerce Clause delegates to Congress power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., Art I, § 8, cl. 3. With one exception,[3] *Lopez* is the first Supreme Court decision in more than fifty years to hold that legislation exceeded the limits of Congress's power under the Commerce Clause. The *Lopez* Court identified three categories of activities that Congress may regulate as part of its commerce power:

> First, Congress may regulate the use of the channels of interstate commerce.... Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may only come from intrastate activities.... Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, ... i.e., those activities that substantially affect interstate commerce.

*Id.* at 558–59, 115 S.Ct. at 1629–30 (internal citations omitted). As in *Lopez,* the first and second categories are not relevant to defendant's constitutional challenge to the statute. *See id.* at 559, 115 S.Ct. at 1629 (holding the first two categories inapplicable). The prohibition on violence for the purpose of improving one's status in a racketeering enterprise is not a regulation of the use of the channels of interstate commerce, or the instrumentalities of interstate commerce, or of persons or things in interstate commerce.

Rather, for any part of Section 1959 to be within Congress's commerce power, it would have to regulate activities that "substantially affect interstate commerce." *Id.* at 559, 115 S.Ct. at 1629. In concluding that the Gun–Free School Zone Act did not meet the "substantially affect[s]" test, the *Lopez* Court relied primarily on three considerations. First, the Court reasoned that the Gun–Free School Zone Act could not be sustained as a

---

**1.** I ruled on defendant's other pre-trial motions at a conference on September 26, 1997.

**2.** "Numerous statutes have been upheld against post-*Lopez* Commerce Clause challenges." *United States v. Trupin,* 117 F.3d 678, 684 & n. 3 (2d Cir.1997) (collecting cases).

**3.** *See National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), *overruled by Garcia v. San Antonio Metro., Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

regulation of activities that "arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[ ] interstate commerce." *Id.* at 561, 115 S.Ct. at 1630. Second, the Court found that the Gun–Free School Zone Act had "no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at 562, 115 S.Ct. at 1631. Finally, the Court noted that Congress had made no legislative findings that would allow the Court to evaluate Congress's judgment that the regulated activity substantially affects interstate commerce. *Id.* at 563, 115 S.Ct. at 1631.

As I explain below, I find that Congress has made a rational determination that status murder, when viewed in aggregate numbers, substantially affects interstate commerce, and that the prohibition on status murder in Section 1959 has a jurisdictional element that limits its scope to murders committed as an aspect of membership in an enterprise engaged in interstate commerce, or engaged in activities that affect interstate commerce.

### A. *Activity Which in the Aggregate Substantially Affects Commerce*

When considering a challenge to Congress's authority under the Commerce Clause, where the court finds "that the legislators ... have a rational basis for finding a chosen regulatory scheme necessary to the protection of commerce, [the court's] investigation is at an end." *Katzenbach v. McClung,* 379 U.S. 294, 303–04, 85 S.Ct. 377, 383–84, 13 L.Ed.2d 290 (1964) (cited in *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2359, 69 L.Ed.2d 1 (1981); *Maryland v. Wirtz,* 392 U.S. 183, 190, 88 S.Ct. 2017, 2020, 20 L.Ed.2d 1020 (1968)). In making such determinations, courts consider legislative and congressional committee findings regarding

the activity's effect on interstate commerce. *Lopez,* 514 U.S. at 562, 115 S.Ct. at 1631. *Cf. United States v. Genao,* 79 F.3d 1333, 1336 (2d Cir.1996) (mentioning the rational basis test set forth in *Wirtz* ).[4] Accordingly, I turn to congressional sources to determine whether Congress had a rational basis for finding Section 1959's prohibitions necessary to the protection of commerce. *See Wirtz,* 392 U.S. at 190, 88 S.Ct. at 2020 (applying rational basis test); *Hodel,* 452 U.S. at 276, 101 S.Ct. at 2359 (same); *McClung,* 379 U.S. at 303–04, 85 S.Ct. at 383–84 (same).

Defendant argues that the congressional commentary on the status murder prohibitions in Section 1959 is too sparse to merit any deference, and that these prohibitions regulate activity that, even when aggregated, does not substantially affect interstate commerce. The implication of this second contention is that congressional determinations on the status murder prohibitions lack a rational basis.

The legislative commentary on Section 1959 is found in a Senate Report. *See* S.Rep. 98–225, 1984 U.S.Cong. and Adm. News 3182, 3484 (hereinafter "Senate Report" with citation to pages of U.S.Code Cong. and Adm. News).[5] With regard to Section 1959's status murder provisions, the Senate Report commented that:

> the need for Federal jurisdiction is clear, in view of the Federal Government's strong interest, as recognized in existing statutes, in suppressing the activities of organized criminal enterprises, and the fact that the FBI's experience and network of informants and intelligence with respect to such enterprises will often facilitate a successful Federal investigation where local authorities might be stymied.

Senate Report at 3484. The Senate thus viewed status murder as part and parcel of the activities of organized enterprises, enterprises which by the terms of the statute are

---

4.  I note that while the Court in *Lopez* characterized *McClung, Hodel,* and *Wirtz* as "giving great deference to congressional action," 514 U.S. at 567, 115 S.Ct. at 1633, and "decline[d] ... to proceed any further," *id.,* the Court did not overrule or modify the standards for assessing congressional findings concerning the connection

between a regulated activity and interstate commerce articulated in these cases.

5.  Section 1959 was first enacted as Section 1952B, but was renumbered in 1988. The Senate Report refers to Section 1959 as Section 1952B.

"engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(b)(2).

The close connection between the conduct regulated by Section 1959's status murder prohibitions and the prohibitions of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C § 1962 (1997) ("RICO") makes it appropriate to refer to the legislative findings underlying the RICO statute regarding the effects of organized criminal enterprises on interstate commerce. In enacting the RICO statute, Congress made explicit the statute's relation to interstate commerce:

> [O]rganized crime in the United States ... drains billions of dollars from America's economy by unlawful conduct and the illegal use of force.... [O]rganized crime activities in the United States weaken the stability of the Nation's economic system ... [and] seriously burden interstate and foreign commerce.

Congressional Statement and Findings of Purpose, Organized Crime Control Act, Pub.L. No. 91–452, 84 Stat. 922, 922–23 (1970) ("Congressional Crime Control Findings"); *see also United States v. Perez,* 940 F.Supp. 540, 544 (S.D.N.Y.1996) (citing same and upholding Section 1959 against a *Lopez* challenge). This legislative history demonstrates that Section 1959 is part of a broader congressional initiative aimed at suppressing organized criminal activities, which Congress has found substantially affect interstate commerce. *Cf. United States v. Concepcion,* 983 F.2d 369, 381 (2d Cir.1992) (Section 1959 was enacted to complement RICO).

Defendant argues that reliance on the RICO-related legislative findings to justify Section 1959's relation to interstate commerce is misplaced. Defendant contends that, like the statute in *Lopez,* the "prior federal enactments or Congressional findings [do not] speak to the subject matter of [S]ection [1959] or its relationship to interstate commerce." 514 U.S. at 563, 115 S.Ct. at 1631 (internal citation omitted). However, the legislative record cited above belies this contention. Congress specifically found that the activities of organized crime, including the illegal use of force, seriously burden interstate and foreign commerce. *See* Con-

gressional Crime Control Findings at 922–23. Furthermore, the Senate Report on Section 1959 explicitly refers to "the federal government's strong interest, as recognized in existing statutes, in suppressing the activities of organized criminal enterprises." Senate Report at 3484. In light of this congressional commentary, I find that Congress has determined that Section 1959 prohibits conduct that, when viewed in the aggregate, has a substantial effect on interstate commerce.

Defendant also argues that the conduct cannot affect commerce even in the aggregate, because status murders are not motivated by pecuniary gain, but rather by non-economic allegiance to a criminal organization. But even if status murders are not motivated by immediate pecuniary gain, they may nonetheless, in the aggregate, affect interstate commerce. Indeed, the Senate Report on Section 1959 suggests that the Senate viewed status murders as facilitating the activities of organized criminal enterprises. It thus does not make sense to conclude, as defendant urges, that just because an isolated act was not motivated by immediate financial gain it is not the kind of activity that, in the aggregate, can substantially affect interstate commerce. No principle in *Lopez* mandates that the immediate motivation for an activity governs whether the activity can, in the aggregate, substantially affect interstate commerce. Moreover, "[t]he nexus to interstate commerce ... is determined by the class of activities regulated by the statute as a whole, not by the simple act for which an individual defendant is convicted." *Proyect v. United States,* 101 F.3d 11, 13 (2d Cir. 1996).

In view of the potential for organized criminal enterprises to affect interstate commerce through their use of violence, I find that there is a rational basis for Congress's determination that violence committed for racketeering enterprises, when viewed in the aggregate, substantially affects interstate commerce. I therefore defer to that determination, *see Hodel v. Virginia Surface Mining & Reclamation Ass'n. Inc.,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2359, 69 L.Ed.2d 1 (1981) (stating rational basis standard), and find that Section 1959's status murder prohibi-

tions regulate conduct which, when viewed in the aggregate, substantially affects interstate commerce.[6]

### B. Jurisdictional Element

The *Lopez* Court concluded that the Gun–Free School Zone Act did not have an "express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." 514 U.S. at 562, 115 S.Ct. at 1631. Unlike the statute struck down in *Lopez*, Section 1959 does contain an express jurisdictional element that requires a case-by-case inquiry into whether the violent crimes are sufficiently connected to activities affecting interstate commerce.

Section 1959 prohibits commission of violent crime "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to, or maintaining or increasing position in an enterprise engaged in racketeering activity," or for and provides that an "enterprise" includes "any partnership, corporation, association, or other legal entity ... which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(a) & (b)(2). This requirement of an effect on interstate or foreign commerce is the sort of jurisdictional element that the Court found Lacking in *Lopez*.

Defendant argues that this requirement does not satisfy the *Lopez* Court's demand for a jurisdictional element. Specifically, he contends that it does not ensure that each prohibited act of murder will have an interstate commercial impact, because Section 1959 requires only that the activities of the *enterprise,* not the conduct of the *defendant,* affect interstate commerce. Defendant supports this argument first by reminding the Court that under the "substantially affects" prong of *Lopez,* the Court's focus must be on

whether the regulated activity substantially affects interstate commerce. *See Lopez,* 514 U.S. at 560, 115 S.Ct. at 1630. Defendant then suggests that the violent conduct itself, not the activity of the criminal enterprise, is the activity that Section 1959 regulates.

Although this argument has some appeal, it takes too narrow a view of the activity that Section 1959 regulates. Defendant's argument requires sharply distinguishing the violent conduct prohibited by Section 1959 from the other activities of the organized criminal enterprise. There is no basis for such a distinction. As the court stated in *United States v. Perez,* 940 F.Supp. 540, 545 (S.D.N.Y.1996), "both Section 1959 and RICO are efforts to regulate and hinder enterprises engaged in racketeering activity." *Id.* Indeed, Section 1959 prohibits only violence committee in connection with an racketeering enterprise. To obtain a conviction under the status violence prohibitions in Section 1959, the government must:

> prove beyond a reasonable doubt (1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

*United States v. Concepcion,* 983 F.2d 369, 381 (2d Cir.1992). These requirements demonstrate that the regulated activity is not violent conduct considered in isolation, but only violent conduct committed in connection with membership in a racketeering enterprise. They thus mandate the case-by-case inquiry envisioned by the Court in *Lopez,* 514 U.S. at 561–62, 115 S.Ct. at 1630–31, to ensure that the violent conduct in question is sufficiently connected to an enterprise engaged in, or activities which affect, interstate commerce. Moreover, "the *Lopez* Court did not purport to overrule those cases that have upheld application of Commerce Clause pow-

---

**6.** Under *Lopez,* this conclusion is sufficient to uphold these provisions as a valid exercise of Congress's commerce power. *See Lopez,* 514 U.S. at 561, 115 S.Ct. at 1630. However, out of an abundance of caution, I also consider whether Section 1959 has an adequate jurisdictional element.

er to wholly intrastate activities ..." *United States v. Genao,* 79 F.3d 1333, 1337 (2d Cir. 1996).

Because Section 1959 has an adequate jurisdictional element, and because the activities that Section 1959 regulates, in the aggregate, substantially affect interstate commerce, I conclude that Section 1959's prohibitions on murder for the purpose of gaining or increasing one's status in a racketeering enterprise are a proper exercise of Congress's power under the Commerce Clause. I therefore deny defendant's motion to dismiss the indictment.

## II. Conclusion

For the foregoing reasons, I deny defendant's motion to dismiss the indictment. The parties should be prepared to begin trial on December 1, 1997.

SO ORDERED.