**UNITED STATES of America,**
**Appellee,**

v.

**Eric HOLSTON, Defendant–Appellant.**

**Docket No. 02–1292.**

United States Court of Appeals,
Second Circuit.

Argued: April 4, 2003.

Decided: Sept. 4, 2003.

James P. Harrington, Harrington & Mahoney, Buffalo, NY, for Defendant–Appellant.

Paul J. Campana, Assistant United States Attorney, for Michael A. Battle,

United States Attorney, Western District of New York, Buffalo, NY, for Appellee.

Before: OAKES, KEARSE, and B.D. PARKER, JR., Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

Eric Holston appeals from a judgment of conviction entered in the United States District Court for the Western District of New York (Richard Arcara, *Chief Judge*), following his conditional plea of guilty to one count of producing visual depictions of sexually explicit conduct involving a minor, in violation of 18 U.S.C. § 2251(a). Holston's plea preserved his right to appeal the denial of his motion to dismiss the indictment on the ground that § 2251(a), which prohibits the production of pornographic depictions involving a minor "using materials that have been mailed, shipped, or transported in interstate or foreign commerce," was an unconstitutional exercise of Congress's authority under the Commerce Clause. Because we find § 2251(a) to be constitutional, we affirm.

## BACKGROUND

At the time of his arrest in February 2001, Eric Holston lived in the ground-floor apartment of a split-level, two-family dwelling in Buffalo, New York. A single mother with three minor daughters—aged 10, 13, and 14—lived in one of the upstairs apartments. Several days before Holston's arrest, FBI agents executed a search warrant at his apartment and seized video recording equipment and several videotapes depicting Holston engaged in sexually explicit acts with two of the girls. One tape portrayed the 10–year–old girl as Holston touched her genitals, and another tape depicted the 14–year–old girl as she undressed herself and simulated masturbation. Holston was arrested and subsequently charged with producing child pornography in violation of § 2251(a) and

with possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

Holston waived indictment and, pursuant to a plea agreement, pleaded guilty to a one-count information charging him with violating § 2251(a). As part of the factual basis for the plea, the agreement identified various items such as videotapes and video recording equipment that had been used in the production of the depictions and the out-of-state locations where each had been manufactured. Specifically, the agreement indicated that a Panasonic brand "Palm-corder" and JVC and TDK brand mini-cassettes manufactured in Japan, a JVC adapter made in Malaysia, and two video-cassette recorders and a Sony brand video-cassette tape manufactured outside New York State, were used to produce the depictions. The plea agreement preserved Holston's right to appeal in the event the District Court denied his anticipated motion to dismiss the information on the basis that § 2251(a) was unconstitutional. After the District Court denied the motion, Holston pleaded guilty and was sentenced principally to ten years' imprisonment and three years' supervised release. Following entry of judgment, Holston appealed.

## DISCUSSION

■ Holston raises facial and as-applied challenges to the constitutionality of § 2251(a). Citing *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), his main contention is that Congress's attempt, through § 2251(a)'s materials-in-commerce jurisdictional prong, to reach child pornography created for personal use and which does not cross state lines is an unconstitutional exercise of the Commerce Clause power because the jurisdictional prong is too attenuated from

the conduct sought to be regulated. Holston further contends that, even if facially valid, the statute is unconstitutional as applied to him because his conduct was not commercial and did not implicate interstate commerce because the depictions never crossed state lines. We review a challenge to the constitutionality of a statute *de novo*. *United States v. Griffith*, 284 F.3d 338, 345 (2d Cir.2002); *United States v. Bianco*, 998 F.2d 1112, 1120 (2d Cir. 1993).

## I. The Federal Child Pornography Statutes

Section 2251 provides:

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, ... with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), [1] if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, [2] *if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer,* or [3] if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (2000) (emphasis added). Appellant was prosecuted on the basis of the second jurisdictional prong and the Government has not alleged that either of the other jurisdictional bases applies.

Section 2251 was enacted as part of the Protection of Children Against Sexual Exploitation Act of 1977 (the "Act"), Pub.L. No. 95–225, § 2(a), 92 Stat. 7, 8 (1978), (codified at 18 U.S.C. §§ 2251 *et seq.*). The Act is a broad regulatory scheme that prohibits, in addition to the production of child pornography, the receipt, transmission, and possession of child pornography. *See* 18 U.S.C. §§ 2252, 2252A. As originally enacted, § 2251(a) did not contain the jurisdictional language at issue here. Instead, it criminalized the production of pornographic depictions involving minors only if the producer knew, or had reason to know, that the depiction would be transported in interstate commerce, or if it was, in fact, transported in interstate commerce.

When passed in 1978, the Act was supported by congressional findings that "child pornography ... ha[s] become [a] highly organized, multimillion dollar industr[y] that operate[s] on a nationwide scale," and that "the sale and distribution of such pornographic materials are carried on to a substantial extent through the mails and other instrumentalities of interstate and foreign commerce." S. Rep. 95–438, at 5 (1977), *reprinted in* 1978 U.S.C.C.A.N. 40, 42–43, *available at* 1977 WL 9660. Congress also found that "because of the vast potential profits in child pornography"—its low production and reproduction costs and high retail prices—the industry was "growing at a very rapid rate." *Id.* at 7, 1978 U.S.C.C.A.N. at 44.

The Act was amended in 1984 to eliminate the requirement that the production, receipt, transportation, and distribution of child pornography be for a commercial purpose. *See* Child Protection Act of 1984, Pub.L. No. 98–292, 98 Stat. 204; *see also* H.R. Rep. 98–536, at 10 (1983), *reprinted in* 1984 U.S.C.C.A.N. 492, 501, *available at* 1983 WL 25391. This change followed Congress's conclusion that, within the unique realities of the child pornography market, much of the production and traf-

ficking was non-commercial. *See, e.g., id.* at 2, 1984 U.S.C.C.A.N. at 493 ("Many of the individuals who distribute materials covered by 18 U.S.C. Section 2252 do so by gift or exchange without any commercial motive ...."); *id.* at 17, 1984 U.S.C.C.A.N. at 508 ("The bulk of the child pornography traffic is non-commercial."; "Generally, the domestic material is of the 'homemade' variety, while the imported material is produced by commercial dealers."); *see also id.* at 16, 1984 U.S.C.C.A.N. at 507 ("Most often, our investigations have resulted in the identification of collectors, some of whom sell their material while others do not. Those who do not sell their material often loan or trade collections with others who share their interest."). The House Report on the amendment indicated that because much of the pornographic material that concerned Congress was "homemade" and the subject of barter and informal exchanges through underground distribution networks, a statutory regime that required a commercial purpose left a significant enforcement hole that the 1984 amendment was intended to fill.

In 1998, Congress amended § 2251 by adding a new jurisdictional basis which required that the materials used to produce the depictions "have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer." Pub.L. No. 105–314, § 201(a), 112 Stat. 2974, 2977 (1998) (codi-

fied at 18 U.S.C.A. § 2251(a)). The legislative history indicates two reasons for the amendment. The first was to correct an anomaly between the analogous possession statutes, 18 U.S.C. §§ 2252(a)(4)(B), 2252A(a)(4)(B), & 2252A(a)(5)(B), which contained equivalent jurisdictional language,[1] and the production statute, § 2251, which, as originally enacted, did not. The second was to extend the statute to cases where proof of the interstate transportation of the depictions, or proof of the pornographer's knowledge as to the interstate transportation, was absent. *See* H.R. Rep. 105–557, at 26–27 (1998), *reprinted in* 1998 U.S.C.C.A.N. 678, 695, *available at* 1998 WL 285821.

## II. The Commerce Clause under *Lopez* and *Morrison*

Holston contends that the materials-in-commerce prong of § 2251(a) exceeds Congress's authority under the Commerce Clause in light of *Lopez* and *Morrison*. In these two decisions, the Supreme Court "reaffirmed the proposition that the grant of authority to Congress under the Commerce Clause, though broad, is not unlimited." *Solid Waste Agency of N. Cook County v. United States Army Corps of Eng'rs*, 531 U.S. 159, 173, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). Both *Lopez* and *Morrison* involved statutes that regulated local noneconomic activity under the theory that the activity, when viewed in the

---

1. *See* 18 U.S.C. § 2252(a)(4)(B), which applies to "[a]ny person ... who knowingly possesses ... matter which contains any visual depiction [involving the use of a minor engaging in sexually explicit conduct] that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which *was produced using materials which have been mailed or so shipped or transported* " (emphasis added); § 2252A(a)(4)(B), which applies to "[a]ny person ... who knowingly sells or possesses

with the intent to sell any child pornography ... *that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce* " (emphasis added); and § 2252A(a)(5)(B), which applies to "[a]ny person ... who knowingly possesses any ... material that contains an image of child pornography ... *that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce* " (emphasis added).

aggregate, substantially affected interstate commerce.

In *Lopez*, the Supreme Court struck down the Gun–Free School Zones Act of 1990 ("GFSZA"), 18 U.S.C. § 922(q)(1)(A) (1988 ed., Supp. V), which criminalized the knowing possession of a firearm within a school zone. 514 U.S. at 551, 115 S.Ct. 1624. The *Lopez* court identified three broad categories of activity that Congress may regulate under its commerce power: (1) channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities that "substantially affect" interstate commerce. *Id.* at 558–59, 115 S.Ct. 1624. The Court noted that the GFSZA would have to be sustained, if at all, as a category-three regulation, as it involved neither the channels nor the instrumentalities of interstate commerce. *See id.* at 559, 115 S.Ct. 1624.

The Court observed, first, that § 922(q) was a criminal statute that "by its terms has nothing to do with 'commerce' or any sort of economic enterprise," *id.* at 561, 115 S.Ct. 1624, and thus could not be sustained under the Court's "cases upholding regulations of activities that ... are connected with a commercial transaction that, when viewed in the aggregate, substantially affects interstate commerce." *Id.* Next, the Court noted that the statute contained no jurisdictional element that would "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* Finally, the Court noted the absence of congressional findings, which, although not required to sustain legislation, "would enable [the Court] to evaluate the legislative judgment that the activity in question substantially affected interstate commerce, even though no such substantial effect was visible to the naked eye." *Id.* at 563, 115 S.Ct. 1624. On this reasoning, the Court

held the statute unconstitutional. *See id.* at 567–68, 115 S.Ct. 1624.

Five years later, the Court decided *Morrison* and struck down the civil remedy provision of the Violence Against Women Act of 1994 ("VAWA"), 42 U.S.C. § 13981. 529 U.S. at 616–17, 120 S.Ct. 1740. Elaborating on *Lopez*, the Court identified four factors to be considered in determining the existence of a "substantial effect" on commerce. They were whether: (1) the activity at which the statute is directed is commercial or economic in nature; (2) the statute contains an express jurisdictional element involving interstate activity that might limit its reach; (3) Congress has made specific findings regarding the effects of the prohibited activity on interstate commerce; and (4) the link between the prohibited conduct and a substantial effect on interstate commerce is attenuated. *See Morrison*, 529 U.S. at 610–12, 120 S.Ct. 1740.

Applying these principles to § 13981, the Court noted, first, that "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." *Id.* at 613, 120 S.Ct. 1740. Further, § 13981 contained no jurisdictional element "establishing that the federal cause of action is in pursuance of Congress's power to regulate interstate commerce." *Id.* The Court acknowledged that the provision was supported by "numerous findings regarding the serious impact that gender-motivated violence has on victims and their families," *id.* at 614, 120 S.Ct. 1740, but held that these findings were insufficient, especially when the methodology relied upon by Congress had been undermined by *Lopez*. *See id.* at 615, 115 S.Ct. 1624. Finally, the Court found that the link between gender-related violence and a substantial effect on interstate commerce was attenuated. *See id.* The Court accordingly held the provision insufficient-

ly grounded in the Commerce Clause. *See id.* at 616–17, 115 S.Ct. 1624.

## III. Constitutionality of Section 2251 Under *Lopez* and *Morrison*

■ Although other circuits have spoken on the constitutionality of the materials-in-commerce prong of § 2251(a), we have not yet done so.[2] Applying *Lopez* and *Morrison* requires us to determine whether, in light of the *Morrison* factors, the statute regulates an activity that "substantially affects" interstate commerce. The first factor—whether the activity targeted by the statute is commercial or economic in nature—is satisfied here. We accept Congress's conclusions both that there is an extensive commercial market in child pornography and that much of the material that feeds this market is "homegrown," that is, produced by amateur pornographers. Producing child pornography, like manufacturing controlled substances—and unlike the activities targeted in *Lopez* or *Morrison*—concerns "obviously economic activity." *Proyect v. United States,* 101 F.3d 11 (2d Cir.1996) (internal quotation marks omitted). Accordingly, we find that the activity addressed by the statute is commercial in nature. *See, e.g., United States v. Buculei,* 262 F.3d 322, 329 (4th Cir.2001) ("[T]here can be no doubt that the production of visual depictions of minors engaging in sexually explicit conduct, i.e., child pornography, is economic in nature."); *see also United States v. Kallestad,* 236 F.3d 225, 228 (5th Cir.2000) (holding that possession of child pornography is conduct that is "commercial in character, defined broadly"; citing the

---

**2.** Some circuits have ruled on the sufficiency of nearly identical jurisdictional language contained in the analogous possession statute, 18 U.S.C. § 2252(a)(4)(B). Because the relevant jurisdictional language is equivalent to that in § 2251(a), we find precedent based on § 2252(a)(4)(B) applicable here.

Of the seven circuits to address the issue, five have upheld convictions under this jurisdictional prong. *See United States v. Hoggard,* 254 F.3d 744, 746 (8th Cir.2001) (affirming a conviction under § 2251); *United States v. Kallestad,* 236 F.3d 225, 228–31 (5th Cir.2000) (affirming a conviction under § 2252(a)(4)(B) on the ground that the statute regulates an activity that has a "substantial effect" on interstate commerce in light of the *Morrison* factors); *United States v. Angle,* 234 F.3d 326, 338 (7th Cir.2000) (affirming a conviction under § 2252(a)(4)(B) under a market theory; statute "prohibits intrastate activity that is substantially related to the closely regulated interstate market of child pornography"); *United States v. Rodia,* 194 F.3d 465, 476 (3d Cir.1999) (affirming a conviction under § 2252(a)(4)(B) based on a market theory); *United States v. Robinson,* 137 F.3d 652, 656 (1st Cir.1998) (affirming a conviction under § 2252(a)(4)(B) because the local possession of child pornography " 'through repetition elsewhere,' ... helps to create and sustain a market for sexually explicit materials depicting minors" and thus substantially affects the instrumentalities of interstate commerce).

The only two circuits that have failed to uphold a conviction under this jurisdictional prong, the Sixth and the Ninth, did so in the context of the analogous possession statute, § 2252(a)(4)(B), and somewhat unique facts. *See United States v. McCoy,* 323 F.3d 1114 (9th Cir.2003); *United States v. Corp,* 236 F.3d 325 (6th Cir.2001). *McCoy* involved a single family photograph of a child taken by a parent with no commercial or interstate component, 323 F.3d at 1115, and *Corp* involved several photographs taken by a 23–year–old man of a 17–year–old girl who was within months of majority status, 236 F.3d at 326. Neither decision held the statute facially unconstitutional; *Corp* found it unconstitutional only as applied, *id.* at 332–33, and *McCoy,* unconstitutional only as applied to McCoy and "others similarly situated," defined as those who merely possess a visual depiction intrastate where the depiction has not been mailed, shipped, or transported interstate and "is not intended for interstate distribution or for economic or commercial use, including the exchange of the prohibited material for other prohibited material." 323 F.3d at 1127, 1133.

"interstate attributes" of child pornography).

The second *Morrison* factor, whether the statute contains a jurisdictional element that might limit its application, is at least superficially met here. The statute, as we have seen, proscribes the production of child pornography with materials that have been shipped in interstate or foreign commerce. But we question whether the mere existence of jurisdictional language purporting to tie criminal conduct to interstate commerce can satisfactorily establish the required "substantial effect," where, as here, the interstate component underpinning the jurisdictional element, for example, the shipment of a video camera, is attenuated from the criminal conduct—the production of child pornography—which occurs entirely locally. As the Third Circuit observed, "[a]s a practical matter, the limiting jurisdictional factor is almost useless here, since all but the most self-sufficient child pornographers will rely on film, cameras, or chemicals that traveled in interstate commerce." *United States v. Rodia*, 194 F.3d 465, 473 (3d Cir.1999). Because we find, however, as discussed below with respect to the fourth *Morrison* factor, that the activity on the whole bears a significant relationship to interstate commerce, the failure of the jurisdictional element effectively to limit the reach of the statute is not determinative. *Cf. Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1068 (D.C.Cir.2003) ("[T]he absence of such a jurisdictional element simply means that courts must determine independently whether the statute regulates activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[ ] interstate commerce.") (internal quotation marks omitted).

Turning to the third *Morrison* factor, we observe that § 2251(a) was well supported by legislative findings documenting both the existence of an extensive national market in child pornography and that market's reliance on the instrumentalities of interstate commerce. Although these findings were made in connection with the statute's original passage in 1978 and not at the time of the 1998 amendment, these findings apply with equal force to the amendment. *See, e.g., Maryland v. Wirtz*, 392 U.S. 183, 189 n. 13, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968) (noting that it was "quite irrelevant" that the legislative history of the amendments being challenged did not provide a factual basis for extending the original statute because "[t]he original Act stated Congress's findings and purposes" and "[s]ubsequent extensions of coverage were presumably based on similar findings and purposes with respect to the areas newly covered"), *overruled on other grounds, Nat'l League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

Furthermore, the House Report on the amendment emphasized that the absence of the jurisdictional language was inconsistent with the child pornography possession statutes and left a significant enforcement hole in the prosecution of child pornography production offenses. *See* H.R. Rep. 105–557, at 26 (1998), *reprinted in* 1998 U.S.C.C.A.N. 678, 695, *available at* 1998 WL 285821.[3]

---

3. As other courts have noted with respect to the amended § 2252(a)(4)(B), Congress was not "plow[ing] thoroughly new ground" in enacting the jurisdictional element, as it "has long legislated in the area of child pornography, and given the legislative history of the regulatory scheme, the addition of the clause at issue 'was not novel but incremental.'" *Angle*, 234 F.3d at 338 (quoting *United States v. Kenney*, 91 F.3d 884, 890 (7th Cir.1996)); *see also Rodia*, 194 F.3d at 482 (Roth, J., concurring) (noting that the court's decision

We now reach the final *Morrison* factor, whether the relationship between the regulated activity and a substantial effect on interstate commerce is attenuated. As we have seen, Congress concluded that there is an extensive interstate market in child pornography and that the existence of this market depends on a distribution network that relies heavily on the mails and other instrumentalities of interstate commerce. In other words, "[t]here can be no debate that 'interstate trafficking in child pornography has an effect on interstate commerce.'" *Angle*, 234 F.3d at 337 (quoting *Rodia*, 194 F.3d at 474). Since no one would doubt Congress's ability to regulate a national market in child pornography, the question becomes "whether Congress could rationally have determined that it must reach local, intrastate conduct in order to effectively regulate a national interstate market." *United States v. Kallestad*, 236 F.3d at 229. Congress understood that much of the pornographic material involving minors that feeds the market is locally produced, and this local or "homegrown" production supports demand in the national market and is essential to its existence. *See United States v. Robinson*, 137 F.3d 652, 656 (1st Cir.1998) (affirming a conviction under § 2252(a)(4)(B) because the local possession of child pornography "'through repetition elsewhere,' ... helps to create and sustain a market for sexually explicit materials depicting minors" and thus substantially affects the instrumentalities of interstate commerce); *United States v. Rodia*, 194 F.3d 465, 476 (3d Cir.1999) (affirming a conviction under § 2252(a)(4)(B) based on a market-theory rationale similar to *Robinson*). Because much of the child pornography that concerned Congress is homegrown, untraceable, and enters the national market surreptitiously, we conclude that Congress, in an attempt to halt interstate trafficking, can prohibit local production that feeds the national market and stimulates demand, as this production substantially affects interstate commerce. Accordingly, we conclude that insofar as § 2251(a) prohibits the production of child pornography using materials that have moved in interstate commerce, it is a permissible exercise of Congress's authority under the Commerce Clause.

 Finally, we turn to Holston's contention that § 2251(a) is unconstitutional as applied to him. He contends that the government was required—but failed—to prove an actual nexus to interstate commerce because it did not prove that he intended to sell the depictions or that they ever entered interstate commerce. This argument is essentially foreclosed by *Proyect v. United States*, 101 F.3d 11 (2d Cir.1996) (per curiam), which involved a Commerce Clause challenge to a conviction under 21 U.S.C. § 841(a)(1) for the growing of marijuana where there was no evidence that the drug was intended for interstate distribution. We held that when Congress regulates a class of activities that substantially affect interstate commerce, "[t]he fact that certain intrastate activities within this class, such as growing marijuana solely for personal consumption, may not actually have a significant effect on interstate commerce is ... irrelevant." 101 F.3d at 14. Moreover, "[t]he nexus to interstate commerce ... is determined by the class of activities regulated by the statute as a whole, not by the

was not "plowing new ground [by upholding the statute], as was the situation in [*Lopez*], where there were no congressional findings" concerning the effect of local gun possession on interstate commerce; noting that the stat-

ute "has been repeatedly held to cover conduct that affects interstate commerce," and this should be kept in mind when examining the jurisdictional amendment).

simple act for which an individual defendant is convicted." *Id.* at 13. Where, as here, " 'a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence.' " *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624 (quoting *Wirtz*, 392 U.S. at 196 n.27, 88 S.Ct. 2017) (internal formatting omitted). The government need not demonstrate a nexus to interstate commerce in every prosecution. *See Proyect*, 101 F.3d at 14. As we are satisfied that § 2251(a) lies within Congress's powers under the Commerce Clause, the fact that Holston neither shipped the materials interstate nor intended to benefit commercially from his conduct is of no moment.

## CONCLUSION

For the foregoing reasons, the judgment is AFFIRMED.