# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4074

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Allan C. Mugan, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 23, 2006
Filed: March 28, 2006 (Corrected: 03/31/06)

_____

Before MURPHY, HEANEY, and BEAM, Circuit Judges.

_____

MURPHY, Circuit Judge.

We previously affirmed Allan Mugan's conviction and sentence, and his case is now back from the Supreme Court which granted his petition for certiorari, vacated our earlier judgment, and remanded for further proceedings in light of United States v. Booker. 543 U.S. 220 (2005). Additional briefing was requested from the parties addressing the impact of Booker on this case. After studying these submissions as well as the record, we conclude that Mugan is not entitled to relief under Booker because he failed to raise a Sixth Amendment objection to his sentence in the district

court[1], and he has not shown plain error.  See United States v. Pirani, 406 F.3d 543, 548-49 (8th Cir. 2005) (en banc).  We affirm the judgment of the district court.

I.

Mugan used a digital camera to take sexually explicit photographs of himself having intercourse with his 13 year old daughter.  The photographs were stored on a digital memory stick that had previously been shipped in interstate and foreign commerce.  Because the photographs were stored in this way, they were capable of immediate and widespread distribution over the internet.  Law enforcement officials discovered the memory card while executing a warrant at Mugan's residence.  At that time they also found a videotape of Mugan's daughter dancing while the camera zoomed in on her pubic area.

Mugan was indicted for using a minor to engage in sexually explicit conduct for the purpose of producing a visual image, with the use of materials which had been shipped in interstate commerce, in violation of 18 U.S.C. § 2251(a).[2]  The indictment also charged Mugan with knowing possession of child pornography produced with interstate materials, in violation of 18 U.S.C. § 2252A(a)(5)(B).[3]  Mugan moved to

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

[2]18 U.S.C. § 2251(a) prohibits the use of a minor "to engage in...any sexually explicit conduct for the purpose of producing any visual depiction of such conduct" if the depiction is produced with materials previously "mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer."

[3]18 U.S.C. § 2252A(a)(5)(B) prohibits the knowing possession of "any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography" if it was produced with materials that have been "mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer."

2

dismiss the indictment, contending that the federal government was without authority to prosecute him since he had not transported the stored images in interstate commerce, nor had he intended to do so.

Before the district court ruled on the motion to dismiss, Mugan entered a conditional plea of guilty to the charge under § 2251(a) of using a minor in order to produce child pornography. His plea agreement preserved his right to raise his constitutional issue on appeal, and the district court later denied his motion to dismiss. Mugan attempted to appeal prematurely from that ruling, but his appeal was dismissed for lack of jurisdiction.

Mugan's relationship with his attorney became strained over the course of the proceedings. His lawyer moved to withdraw from representation, complaining that Mugan failed to take legal advice or pay attorney fees. Mugan opposed the motion, and it was withdrawn before he pled guilty. The motion was later renewed and granted by the court; new counsel was then appointed for Mugan. One week prior to his sentencing hearing, Mugan filed a motion to withdraw his guilty plea. He contended that his first lawyer had not adequately explained the plea bargaining process and that he had been misled about the sentencing departures that would be sought by the government. The motion was denied, and the case came on for sentencing on Mugan's § 2251(a) conviction.

The district court assigned Mugan a base offense level of 27, see U.S.S.G. § 2G2.1(a), and increased it by four levels due to the age of the victim and her relationship to Mugan. See U.S.S.G. §§ 2G2.1(b)(1)(B), 2G2.1(b)(2). The district court also imposed a two level enhancement for obstruction of justice based on letters in which Mugan had solicited false, exculpatory testimony from family members. His adjusted offense level of 33, together with his criminal history category III, resulted in a sentencing range of 168 to 210 months.

The district court departed upward two levels on the grounds that Mugan's administration of sleeping medication to his daughter to facilitate the production of the sexually explicit photographs was a factor not accounted for in the sentencing guidelines, see 18 U.S.C. 3553(b), and that Mugan's criminal history failed to reflect the seriousness of his past conduct. See U.S.S.G. § 4A1.3(a)(1). The resulting total offense level of 35 placed Mugan in a range of 210 to 262 months imprisonment, and the district court sentenced him to the statutory maximum of 240 months in prison. His sentence also included three years supervised release, $4,500 restitution to his wife for wages lost when she was fired as a result of his conduct, and a $100 special assessment. Mugan appealed from the judgment, challenging both his conviction and sentence.

## II.

Mugan argues that the statutes under which he was charged are beyond the constitutional authority of Congress to regulate interstate and foreign commerce because they target the purely intrastate production and possession of child pornography. U.S. Const. Art. I, § 8, Cl. 3. Mugan contends that the intrastate production and possession of child pornography without a proven intent to distribute it beyond the state is noneconomic conduct outside the reach of the commerce power, citing United States v. Morrison, 529 U.S. 598 (2000). Although the statutes contain a jurisdictional element which requires that the child pornography have been produced with interstate materials, he says they fail to ensure a connection between the images and interstate commerce. He also claims that Congress has not made findings addressing the effects of intrastate pornography on interstate commerce and that the connection between purely local child pornography and interstate commerce is attenuated.

The government responds that this court has already upheld the constitutionality of § 2251(a) and other child pornography provisions, based on their

4

express jurisdictional elements requiring that interstate materials have been used in the production of the pornography. Since Mugan was shown to have used a digital memory card obtained through interstate commerce in producing the images, the government maintains that his prosecution is constitutional. The government further argues that the prosecutor need not prove commercial distribution or an intent to distribute commercially because the child pornography industry as a whole substantially affects interstate commerce.

While we review a challenge to the constitutionality of a statute de novo, United States v. Crawford, 115 F.3d 1397, 1400 (8th Cir. 1997), cert. denied, 522 U.S. 934 (1997), "[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds," United States v. Morrison, 529 U.S. at 607.

Congress has the power under the Commerce Clause to regulate "activities that substantially affect interstate commerce," as well as the channels and instrumentalities of interstate commerce. United States v. Lopez, 514 U.S. 549, 558-59 (1995). Whether an activity is one that substantially affects interstate commerce is determined by focusing on four factors in particular: (1) whether the regulated activity is economic in nature; (2) whether the statute contains an express jurisdictional element which limits its application to activities with "an explicit connection with or effect on interstate commerce"; (3) whether there are congressional findings about the regulated activity's effects on interstate commerce; and (4) whether the connection between the activity and a substantial effect on interstate commerce is attenuated. Morrison, 529 U.S. at 610-13.

We have already upheld the constitutionality of federal child pornography prosecutions under the statute of which Mugan was convicted and under similar statutes. The first of our cases preceded the Supreme Court's Morrison decision, but

the other two came after it. In United States v. Bausch, 140 F.3d 739 (8th Cir. 1998), we affirmed a conviction for possession of child pornography under 18 U.S.C. § 2252(a)(4)(B). We rejected the defendant's claim that his prosecution was unconstitutional, for the statute's "express jurisdictional element," which limits prosecution to cases in which the depictions or the underlying materials had been transported in interstate commerce, ensured that "each defendant's pornography possession affected interstate commerce." Id. at 741. Then in United States v. Hoggard, 254 F.3d 744, 746 (8th Cir. 2001), we upheld a conviction under § 2251(b) for pornographic photographs of children engaged in sex acts with the defendant's wife which were produced with interstate materials. In the opinion authored by Judge Richard S. Arnold, the court held that it was "bound by the reasoning of Bausch" and it distinguished Morrison and Lopez because in neither of those cases "did the statute involved contain an express jurisdictional element, requiring the government to prove, in each case, a concrete connection with interstate commerce." Id.

Our third precedent was one involving the same statute under which Mugan was convicted. The defendant in United States v. Hampton, 260 F.3d 832, 833-34 (8th Cir. 2001), cert. denied, 535 U.S. 1058 (2002), was prosecuted under §§ 2251(a) and 2252(a)(4)(B) for the intrastate production and possession of child pornography on videotapes transported in interstate commerce. The defendant argued that Bausch was "no longer good law" in light of Morrison, Jones v. United States, 529 U.S. 848 (2000), and Lopez. Id. at 834. The opinion, authored by then Chief Judge Roger Wollman, pointed out that subsequent to those Supreme Court decisions, our court held in Hoggard "that Bausch continues to control the constitutionality of federal criminalization of child pornography produced with materials that have traveled in interstate commerce." Id. at 834-35. The defendant's constitutional attack thus failed.

These circuit precedents are controlling here. See United States v. Wright, 22 F.3d 787, 788 (8th Cir. 1994). The statutes under which Mugan was charged, §§ 2251(a) and 2252A(a)(5)(B), both require proof that the subject child pornography

6

was produced with materials transported in interstate commerce, and the evidence in this case includes proof that the offending images were stored on a digital memory card previously transported in interstate commerce. Mugan's convictions are therefore tied to interstate commerce, and they are not constitutionally infirm.

Although our Eighth Circuit cases have focused on the express jurisdictional element part of the Morrison test in analyzing the constitutionality of federal prosecution of intrastate child pornography, some other circuits have used a broader approach. In a case brought like Mugan's under § 2251(a), for the production of child pornography with equipment transported in interstate commerce, the First Circuit looked at the congressional findings underlying the statute. See United States v. Morales-De Jesús, 372 F.3d 6 (1st Cir. 2004). It cited the findings Congress made about the large scale of the interstate child pornography market, the reliance of that market on materials produced intrastate, and the ability of intrastate production to "inflame[] the desires" of consumers and thereby increase interstate demand. Id. at 10-11 (quoting Child Pornography Protection Act of 1996, Pub. L. No. 104-208, § 1(4), 110 Stat. 3009 (1996)). Based on the existence of a nationwide "highly organized, multimillion dollar" child pornography industry that relies on locally produced images, id. at 10 (quoting S. Rep. No. 95-438, at 6 (1977)), the First Circuit concluded that the intrastate production of child pornography is an economic activity which has a direct connection with a substantial effect on interstate commerce and that Congress could "curb the nationwide supply for these materials" by stopping such intrastate production. Id. at 16.

In yet another § 2251(a) prosecution, the Second Circuit used a similar analysis in rejecting a challenge to federal jurisdiction in a case where child pornography was produced with videocassettes which had traveled interstate. United States v. Holston, 343 F.3d 83 (2d Cir. 2003). The court found that intrastate child pornography production is an economic activity due to its role in supplying the extensive interstate market which Congress documented and that there is more than an attenuated

7

connection between intrastate child pornography production and a substantial effect on interstate commerce. Id. at 88-89. Since "much of the child pornography that concerned Congress is homegrown, untraceable, and enters the national market surreptitiously," Congress had the authority to prohibit the "local production that feeds the national market and stimulates demand," for it has a substantial effect on interstate commerce. Id. at 90.

The Fifth Circuit also focused on the national market in United States v. Kallestad, 236 F.3d 225 (5th Cir. 2000), where it upheld a § 2252(a)(4)(B) conviction for possession of pornographic materials. It observed that interstate child pornography traffic often "'involves photographs taken by child abusers themselves,'" which are then published in commercial magazines distributed through the mails. Id. at 228-29 (quoting Attorney General's Commission on Pornography: Final Report 406 (U.S. Dep't of Justice, 1986)). The relationship between intrastate possession and interstate commerce was held to be substantial. Since law enforcement officials are often unable to determine whether a particular piece of child pornography has traveled in interstate commerce, the Fifth Circuit concluded that Congress could constitutionally regulate purely intrastate production and possession in order to curb interstate trade. Id. at 231.

In these three child pornography cases our sister circuits considered all of the Morrison factors, including the realities of the marketplace,[4] and it makes sense for

---

[4]Not long after Morrison, two circuits took a narrower approach in deciding that § 2252(a)(4)(B) had been unconstitutionally applied in the prosecutions before them. The Sixth Circuit held that a substantial connection to interstate commerce was not evident in the facts presented in United States v. Corp, 236 F.3d 325, 332-33 (6th Cir. 2001), and the Ninth Circuit found no economic activity in the specific facts of United States v. McCoy, 323 F.3d 1114, 1115 (9th Cir. 2003). Neither case considered the extent of the child pornography market described by Congress and its dependency on intrastate materials.

us also to look beyond the jurisdictional nexus element in analyzing the effects on interstate commerce. The extent of the interstate market for child pornography described by Congress and its dependence upon locally produced materials demonstrate that the intrastate production and possession of child pornography is an economic activity connected to interstate commerce. The congressional findings underlying the child pornography statute at issue in the case before the court distinguish it from Lopez, 514 U.S. at 562-63, where there were no findings tying the statute to interstate commerce, and from Morrison, 529 U.S. at 614-15, where there were only general findings showing no more than an attenuated effect on interstate commerce. Moreover, unlike the possession of guns in school zones in Lopez, 514 U.S. at 561, and the gender related violence in Morrison, 529 U.S. at 617, the intrastate production of child pornography is "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated," Lopez, 514 U.S. at 561.

The connection between intrastate child pornography and interstate commerce is even stronger in this case than those decided by the First, Second, and Fifth Circuits. Not only had the materials Mugan used in the production of his pornography traveled in interstate commerce, but the sexually explicit images of him with his daughter were digitally stored on a memory card. By storing the images on this digital card, Mugan placed them on a medium which would permit their immediate and widespread dissemination over the internet. Although locally produced and possessed, Mugan's images were thus ready to be offered on the national market in child pornography. In contrast, the images at issue in Morales-De Jesús, Holston, and Kallestad were not as easily distributable since they would have required physical reproduction and dissemination on film or videocassettes. The convictions in those cases were nonetheless upheld without proof that the images had been transmitted in interstate commerce or that such transmission was intended. That type of detailed proof need not be made in each individual case when there is a "general regulatory statute bear[ing] a substantial relation to commerce," such as

9

there is here. See Lopez, 514 U.S. at 558 (internal citations omitted). This is because "the de minimis character of individual instances arising under [such a] statute is of no consequence." Id.

Not only must Mugan's constitutional challenge be rejected under our circuit precedents, but a more detailed application of the Morrison factors supports that result. Given the congressional findings about the nationwide child pornography market and its dependence upon locally produced materials for both supply and demand, Mugan is not entitled to prevail on his constitutional arguments.

III.

Mugan next argues that the district court erred in denying his motion to withdraw his guilty plea. He contends that he should have been allowed to withdraw the plea because his counsel was ineffective and the prosecutor was misleading about the extent of sentencing departures that would be sought. We review a district court's denial of a motion to withdraw a plea for abuse of discretion. United States v. Payton, 168 F.3d 1103, 1105 (8th Cir. 1999). A guilty plea may be withdrawn before sentencing if the defendant demonstrates a "fair and just reason" for the withdrawal. Fed. R. Crim. P. 11(d)(2)(B). The district court may also consider any assertions of legal innocence, the amount of time between the plea and the motion to withdraw, and the prejudice to the government in granting the motion. Payton, 168 F.3d at 1105. The defendant bears the burden of showing fair and just grounds for withdrawal. United States v. Gray, 152 F.3d 816, 819 (8th Cir. 1998).

Mugan did not show a fair and just reason for the withdrawal of his plea. No factual record was developed to support his assertions of ineffective assistance, and such claims ordinarily are best reviewed in collateral proceedings. See Payton, 168 F.3d at 1105 n.2. Mugan's contention that he was misled about the government's sentencing posture is also not supported by the record. The government stated at

10

Mugan's plea hearing that the parties could seek departures under the plea agreement, and the court notified Mugan that he faced up to twenty years in prison. At the same hearing Mugan acknowledged that no promises beyond those in the plea agreement had been made to him. Mugan did not move for withdrawal until five months after the entry of his plea (and three and a half months after the appointment of new counsel), and his only assertion of innocence was made at the prompting of his lawyer during the motion hearing. Guilty pleas should not be "set aside lightly." United States v. Prior, 107 F.3d 654, 657 (8th Cir. 1997), cert. denied, 522 U.S. 824 (1997). We conclude that the district court did not abuse its discretion in denying Mugan's motion to withdraw.

IV.

Mugan raises a number of issues in respect to his sentence. In his initial arguments on appeal he contended that the district court clearly erred in imposing an obstruction of justice enhancement based upon his letters to family members and that it abused its discretion by departing upward based on its findings about the nature of his offense and his criminal history. After Booker he also argues that he is entitled to resentencing because the district court made upward adjustments based on facts not charged or proven beyond a reasonable doubt and imposed an unreasonable sentence. The government responds that there was sufficient evidence for the district court to apply the obstruction of justice enhancement and to depart upward based on the nature of the offense and Mugan's past behavior. It argues that Mugan's Booker issues are subject to plain error review and that there is no indication the district court would have imposed a lesser sentence had the sentencing occurred after Booker issued.

## A.

We initially address Mugan's argument that the district court erred by granting an obstruction of justice enhancement based upon letters he wrote to family members and by departing upward because of his use of sleeping medication to facilitate his crime, his propensity for committing future crimes, and the seriousness of his past conduct. The review of findings of fact at sentencing is for clear error and this remains true after Booker. United States v. Mashek, 406 F.3d 1177, 1181 (8th Cir. 2003). The reasonableness of the district court's sentencing departures are reviewed for abuse of discretion, and whether the district court based its departures on a permissible factor is reviewed de novo. United States v. Long Turkey, 342 F.3d 856, 859-60.

The district court found that Mugan attempted to obstruct justice by sending letters to his wife and other family members in which he solicited false and exculpatory testimony. He wrote his wife in violation of a state no contact order and repeatedly asked and demanded that she withdraw her earlier identification of him in the photographs that were the subject of the prosecution, going so far as to suggest she indicate "only 50%" certainty that he was the one pictured. A letter from Mugan to his brother also emphasized his wife needed to claim uncertainty and requested ideas about how to minimize a prior instance of his sexual contact with a minor.

Under USSG § 3C1.1, a two level enhancement should be applied if the court finds a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Obstruction includes both "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so," and "committing, suborning, or attempting to suborn perjury." Id. cmt. n.4(a)-(b).

12

Mugan argues that the district court misconstrued his letters. At the sentencing hearing Mugan testified that he was only seeking truthful testimony from all involved. The district court disbelieved this testimony, and its credibility determination is entitled to deference. United States v. Peck, 161 F.3d 1171, 1174 (8th Cir. 1998). Moreover, his letters do not read like his goal was the pursuit of the truth. To the contrary, the letters solicited testimony to diminish evidence of his guilt and to improve his sentencing posture. The district court did not err in enhancing Mugan's sentence.

The district court departed upward based in part on Mugan's use of sleeping medication in committing his crime. The court relied on a letter Mugan wrote to his wife about his offense in which he said that he had used "sleep medicine" before taking pictures of his sexual intercourse with the daughter because he did not want her to know what he had done. The district court found Mugan had drugged his victim in order to facilitate his offense. The guidelines provide no specific enhancement for the drugging of a victim, and the court found that Mugan's drugging of his daughter was an aggravating circumstance of a kind not accounted for in the guidelines.

At the sentencing hearing Mugan denied using the medication and claimed he lied to his wife in order to dispel rumors that his daughter was a willing participant. According to Mugan, the government failed to rebut this testimony so the district court's finding that medication was used was clearly erroneous. The district court was in the best position to determine the credibility of Mugan's testimony, however. See United States v. Holt, 149 F.3d 760, 762 (8th Cir. 1998). It was not clear error for it to believe Mugan's earlier written statement, rather than the oral comments made at the sentencing hearing. Mugan also contends that the Sentencing Commission must have specifically considered and rejected an enhancement for defendants who use chemicals to accomplish their way with a victim since the guidelines specifically provide for an enhancement when a victim is physically restrained. See U.S.S.G. §§

13

3A1.3, 1B1.1 cmt. n.1(K). There is no indication in the guidelines that the enhancement for physical restraint was intended to include the use of drugs to facilitate sex abuse, and we conclude that Mugan's administration of sleep medication to his daughter to accomplish his purpose was a permissible factor on which to depart and that the district court's departure was reasonable. 18 U.S.C. § 3553(b)(2)(A)(i).

Mugan's other argument relates to the other basis for the upward departure, the finding by the district court that his criminal history category of III failed to represent the seriousness of his past conduct and future risk. This finding was based on the testimony of three of Mugan's nieces. The first niece testified that Mugan molested her at the age of fourteen, but no charges were filed. The second testified that Mugan viewed a pornographic film with her and another minor girl; Mugan pled guilty to contributing to the delinquency of a minor as a result. The third testified that Mugan sexually assaulted her on three occasions; he pled guilty to simple assault. The district court also found from Mugan's letters that he had taken "inappropriate pictures" of another daughter from a former marriage. The court concluded that the seriousness of these actions and the likelihood of future criminal conduct suggested by them was not reflected in the minor convictions that resulted from the conduct, thus justifying an upward departure under § 4A1.3.

Section 4A1.3 permits upward departures when there is "reliable information" that the seriousness of the defendant's past crimes or the likelihood that he would commit others was not fully reflected in his criminal history category. Mugan contests the departure both factually and legally. First he contends that his nieces were motivated to lie and that they gave conflicting testimony. The district court believed their testimony, however, and we see no reason not to credit its determination. See Holt, 149 F.3d at 762 (8th Cir. 1998). Mugan also argues that his prior conduct does not demonstrate the level of incorrigibility or dangerousness required under § 4A1.3. While Mugan's prior criminal history is not as extensive as some, his consistent pattern of sexual misconduct indicates a likelihood of future

14

sexual abuse not reflected in his criminal history category. See U.S.S.G. § 4A1.3 cmt. n.2(B) ("[T]he nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record."). The district court did not err in departing upward on this basis.

B.

Mugan also argues that he is entitled to resentencing under Booker. Since he did not raise any Sixth Amendment issue in the district court or object to the application of mandatory guidelines or cite Apprendi v. New Jersey, 530 U.S. 466 (2000), we will not remand for resentencing absent a showing of plain error. See United States v. Pirani, 406 F.3d 543, 548-49 (8th Cir. 2005) (en banc). To establish plain error, Mugan must establish (1) an error, (2) that is plain, that not only (3) affected his substantial rights, but also (4) "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 466-67 (1997). When, as here, the sentencing court treated the guidelines as mandatory, the first two factors of the plain error test are established. To meet the third factor, Mugan must show a "reasonable probability" that the court would have imposed a more lenient sentence under the now advisory guidelines. Pirani, 406 F.3d at 551.

Mugan argues that the district court would have imposed a lesser sentence had it considered the guidelines advisory because he vigorously objected to the underlying facts upon which the departures and enhancement were based and the court would not have made the same findings under a reasonable doubt standard instead of preponderance of the evidence. Booker did not change the standard of proof for a sentencing court's factual findings, however, and the district court did not use an incorrect standard in sentencing Mugan. United States v. Garcia-Gonon, 433 F.3d 587, 593 (8th Cir. 2006); Pirani, 406 F.3d at 551 n.4. Since the district court's findings were not clearly erroneous and it chose to sentence Mugan at the middle of

15

the guideline range and at the statutory maximum, Mugan has not shown a reasonable probability that the court would have imposed a lesser sentence under advisory guidelines. See United States v. Schwalk, 412 F.3d 929, 934 (8th Cir. 2005).

Finally, Mugan asserts that his sentence was unreasonable because the district court did not consider all of the 18 U.S.C. § 3553(a) factors. A sentence may be unreasonable if the court "fails to consider a relevant factor . . . gives significant weight to an improper or irrelevant factor, or . . . commits a clear error of judgment." United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005). A sentence within the applicable guideline range is "presumptively reasonable." United States v.Lincoln, 413 F.3d 716, 717-18 (8th Cir. 2005).

The district court carefully calculated the applicable guideline range and sentenced Mugan to the statutory maximum sentence of 240 months imprisonment, which was in the middle of the 210 to 262 month recommended guideline range. Although the district court did not specifically address all the § 3553(a) factors when it imposed the 240 month sentence, it explicitly referenced them in setting the conditions of supervised release. In addition the district court stated that Mugan's case was "outside the heartland of cases" and had aggravating factors "considered in the guidelines but present to an unusual degree". 18 U.S.C. § 3553(a)(1). The record before the court included evidence that Mugan had drugged his 13 year old daughter to have intercourse with her, had taken pictures of the sex act, had mailed letters to family members attempting to persuade them into lying in his defense, had previously molested two of his nieces, and had watched a sexually explicit video with a third niece and her friend. The resulting sentence reflects sufficient consideration by the district court of the applicable factors. See United States v. Winters, 411 F.3d 967, 976 (8th Cir. 2005). Based on all the circumstances we conclude Mugan's sentence was not unreasonable. See 18 U.S.C. § 3553(a); Lincoln, 413 F.3d at 717-18.

Because Congress did not exceed its authority under the Commerce Clause in enacting the statutes under which Mugan was convicted, because he did not offer a fair and just reason for the withdrawal of his guilty plea, and because he has not shown that the district court erred or abused its discretion in sentencing, we affirm the judgment.

HEANEY, Circuit Judge, concurring.

I continue to believe that a defendant's challenge to the factual basis for a sentence enhancement preserves his Sixth Amendment sentencing claim. See United States v. Pirani, 406 F.3d 543, 555-62 (en banc) (Heaney, J., dissenting). Moreover, I adhere to the view stated by Judge Bye in Pirani, that defendants who did not properly preserve their Booker claims in the district court are nonetheless generally entitled to resentencing under a constitutional regime. Pirani, 406 F.3d at 562-67 (Bye, J., dissenting). Because a majority of our court held to the contrary on both counts, however, I concur.

_____