# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1447, 11-1448

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Patrick Daniel Osei, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 21, 2011
Filed: May 18, 2012

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Patrick Daniel Osei pled guilty to one count of illegal remuneration and two counts of false statements after being charged with conspiracy to commit health care fraud, aiding and abetting health care fraud, and illegal remuneration. The district court[1] accepted his guilty pleas and sentenced Osei to a prison term of 63 months, an upward variance from a Guidelines range of 46 to 57 months. Prior to sentencing,

_____

[1] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Osei filed a motion to withdraw his plea, claiming he did not make his pleas knowingly or voluntarily and that at the plea hearings, he misunderstood the parties' agreement that conduct relevant to dropped charges could be considered for sentencing purposes. The district court denied Osei's motion. Osei now appeals, arguing the district court erred in denying his motion to withdraw his guilty pleas and in imposing a substantively unreasonable sentence.

I

On October 21, 2009, Osei was indicted for one count of conspiracy to commit healthcare fraud, fifteen counts of aiding and abetting health care fraud, and four counts of illegal remuneration. All charges were based on his scheme to submit fraudulent Medicaid claims through a home health care operation, including claims for services not rendered and for collecting illegal kickbacks in exchange for Medicaid referrals.

Pursuant to a written agreement between himself and the government, Osei pled guilty on April 20, 2010 to one count of illegal remuneration (Count 17 of the indictment). The parties expressly agreed the remaining conduct as alleged in the indictment could be considered as relevant conduct for sentencing purposes. At the change-of-plea hearing, the district court spoke at length with Osei about the factual basis of his guilty plea and the effect of the plea deal on his constitutional rights. The court emphasized that Osei could not plead guilty unless he testified to facts indicating his guilt "because I do not take a guilty plea from somebody who is not actually guilty."

After this questioning, the court asked Osei if he had enough time to talk with his attorney and whether he was satisfied with the representation. Osei answered affirmatively. Finally, the court discussed the effect of the plea with Osei:

So if you plead guilty at the end of today's hearing, there's no trial, there's no appeal ever of the issue of your guilt. You can't ever go up to some different court or come back to me and say I'm not really guilty. Somebody talked to me and said I got a raw deal or I changed my mind or I had a dream. I don't know whatever it would be. That's it forever more. Okay?

Again, Osei responded that he understood and still wished to enter his plea. Following this hearing, the court accepted Osei's guilty plea.

After entering his plea, Osei participated in two proffer sessions, on April 29 and 30. He was subsequently indicted and detained for false statements he made during those sessions related to the whereabouts of a $63,000 check. Though Osei and the government had agreed before these sessions that Osei would turn this check and others over as restitution, Osei instead turned over only half of this check, and negotiated its remainder into smaller cashier's checks payable to himself and his family. When asked about the whereabouts of the check in the proffer sessions, Osei lied and told agents the check had been sent to Ghana to pay for an adoption.

After these proffer sessions, Osei agreed to plead guilty to two counts of false statements based on his conduct in the sessions. At the plea hearing following this agreement, the district court engaged Osei in a colloquy, much like at the first change-of-plea hearing, regarding the factual basis of the plea, whether Osei had sufficient time to consult with his attorneys, whether Osei was satisfied with his representation, and whether Osei had agreed to the plea freely and voluntarily. Osei provided the factual details and answered affirmatively to the district court's questions. After this hearing, Osei returned the remainder of the $63,000 check to the government.

In October 2010, after obtaining new counsel and being taken into custody, Osei moved to withdraw his guilty pleas, claiming that he had acted "like a robot"

during the first change-of-plea hearing, that he did not understand the relevant conduct underlying his plea due to ineffective assistance of counsel, and that his counsel did not adequately investigate and advise him about the consequences of his guilty plea. At a hearing on this motion, Osei testified that he held a master's degree and was highly educated, that he understood what was happening in the plea hearings, and that he had consulted with his attorneys regarding the pleas.

At this hearing, Osei also maintained that he was innocent of the false statements charge, claiming he did not lie about the whereabouts of the $63,000 check during the proffer sessions. However, upon questioning by the court, Osei also claimed he did not lie in his change-of-plea hearing for the false statement charges, in which he testified that he knowingly gave false information to federal investigators. This position led the district court to comment that Osei "can't maintain his innocence if he's maintaining today that it's true that he made a false statement with the investigators."

After this hearing, the district court denied Osei's motion to withdraw his plea. In the explanation of her ruling, the court commented:

> Your motions, the actions that you've taken to begin the withdrawal of the plea did begin after you were taken into custody. And I have some suspicion that it was the fact that you were taken into custody by the magistrate judge that caught you by surprise and that thereafter you started scrambling to try to figure out a way to get out of the situation that you were in. So one has to wonder why it was that you were so alarmed by being deprived of your freedom to move about. The answers that you've given under oath are not truthful, in my view. Your attempts to explain in some ways are impossible to follow, and I think they're impossible to follow because they're just not true. When you try to say, well, I didn't testify falsely under oath before, but I'm testifying now to the exact opposite, but this is true too. That's just gobbledygook.

At the sentencing hearing, the court determined the Guideline range to be 46 to 57 months' imprisonment. However, the court imposed an upward variance of six months from the top of the range and sentenced Osei to 63 months' imprisonment.

In justifying this upward variance, the court noted that the Guidelines did not adequately take into consideration the harm Osei's crime caused:

> One factor that is not adequately taken into consideration by the guidelines is the fact that the loss in this case was of a type that is unusually difficult to track down and to prove. It's an area of our economy that is—that has to depend on the honest services of people who are involved in it, because it's not something that can be—it's not like banking where you can do a balance sheet at the end of every day and figure out whether there's fraud happening. And so this is the kind of fraud that's difficult to detect and difficult to prove. And we've seen some of that here, and that is not taken into account with the guidelines, nor is the fact that this sort of fraud is extremely dangerous and extremely hurtful to the most vulnerable members of society.

The court also noted Osei's apparent lack of remorse for his crime:

> You talk about how you have this business. You talk about it in the current sense. And the idea that you would go out and run this sort of business again is really frightening in terms of what it means for the dollars that are available for people who need home health services. So I don't think that 46 to 57 months is going to be enough for you. I do not believe that that range would provide adequate punishment for the crimes that you've committed. And the more I listen to you talk, the more I become convinced that a longer period of time is necessary for the specific deterrence, meaning that I don't know any other way to protect the public from you.

Osei now appeals the district court's rulings on both withdrawal of his guilty pleas and on his sentence.

II

A

A defendant may withdraw a guilty plea after the court accepts the plea but before it imposes the sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. Mugan, 441 F.3d 622, 630 (8th Cir. 2006). In considering whether there is a just reason for withdrawal, the district court "may also consider any assertions of legal innocence, the amount of time between the plea and the motion to withdraw, and the prejudice to the government in granting the motion." Id. The defendant bears the burden of showing a fair and just reason for withdrawal. Id. at 630–31.

While the "fair and just" standard in Rule 11 is a "liberal standard," this Court has also been clear that the Rule does not create an automatic right of withdrawal for defendants. United States v. Kelly, 18 F.3d 612, 618 (8th Cir. 1994); see also United States v. Woosley, 440 F.2d 1280, 1281 (8th Cir. 1971) ("Rule 11 proceedings are not an exercise in futility. The plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same.").

Osei argues there is a fair and just reason to withdraw his guilty pleas because the pleas were predicated on his attorney's urgings and direction, he misunderstood the parties' agreement regarding relevant conduct for sentencing, and he demonstrated clear confusion (he "acted like a robot") during the Rule 11 colloquy. However, the transcripts of Osei's plea hearings belie these claims. Osei, who is highly educated and has earned a master's degree, testified clearly to the factual bases of his guilty pleas. He responded coherently when the court asked him whether he had adequately conferred with his attorneys. He listened and indicated his understanding and acceptance when the court explained to him that his guilty pleas would be final, and

that he could not later take them back. In short, there is no indication in the record of any fair and just reason to allow Osei to withdraw his guilty pleas, and the district court did not abuse its discretion in refusing to allow withdrawal. See United States v. Boone, 869 F.2d 1089, 1092 (8th Cir. 1989) (The district court did not abuse its discretion in refusing to allow a defendant to withdraw his guilty plea when the record of the plea hearing "directly contradict[ed] [defendant's] assertions of involuntariness" and demonstrated that he "knew and understood the terms of the agreement and its consequences.").

Osei did present a claim of legal innocence regarding his second guilty plea to two counts of false statements, but this claim also does not render the court's refusal to allow him to withdraw his guilty plea an abuse of discretion. First, this claim of innocence only relates to some of Osei's charges. Second, as the district court noted, Osei's claim of innocence of these charges is contradictory and not credible.

B

We review the substantive reasonableness of a district court's sentence for abuse of discretion, Gall v. United States, 552 U.S. 38, 46 (2007), "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Id. at 51. When the district court imposes a sentence outside the Guidelines range, the reviewing court "may not apply a presumption of unreasonableness." Id. It "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. We have been clear that our review of the substantive reasonableness of sentences is narrow and deferential; "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (internal quotations marks omitted).

Osei claims his sentence was substantively unreasonable because the district court did not adequately take into account the fact that he eventually returned a $63,000 check on his own initiative in order "to rectify and mitigate any loss incurred by the government due to misstatements." However, Osei did not return that money until after he made and was indicted for a false statement to federal investigators about those funds. Return of this money is not a mitigating factor that renders an upward variance unreasonable.

Osei also argues that his sentence was unreasonable because it created an unwarranted sentencing disparity between him and his co-conspirators. However, Osei did not raise this issue at his sentencing hearing and thus cannot argue here that the district court was unreasonable in not considering this issue. See United States v. King, 518 F.3d 571, 576–77 (8th Cir. 2008).

The district court did not abuse its discretion in sentencing Osei; the sentence it imposed was not substantively unreasonable. Rather, the court considered the loss Osei's crime caused, Osei's acknowledgment of his crime, and whether a shorter sentence was likely to deter him from offending further.

The judgment of the district court is affirmed.

_____